**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| **OTAY MESA PROPERTY L.P.,**<br>**RANCHO VISTA DEL MAR,**<br>**OTAY INTERNATIONAL LLC,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**UNITED STATES,**<br><br>**Defendant.** | **No. 06-167 L**<br><br>**Hon. Lawrence M. Baskir** |

**ANSWER**

Defendant UNITED STATES hereby responds to the allegations in the numbered paragraphs of Plaintiffs' Complaint as follows:

(Unnumbered Paragraph) The unnumbered paragraph which begins Plaintiffs' Complaint is a characterization of Plaintiffs' claim to which no response is required. In response to the allegations of the second sentence, Defendant admits that employees of the Border Patrol, part of the Bureau of Customs and Border Protection, Department of Homeland Security, have entered unto the property at issue in the complaint

(hereinafter, "Subject Property") at different times in the course of its law enforcement activities; these entries have occurred since the Border Patrol was officially established in 1924. Since 1952, those entries have been made pursuant to the authority of 8 U.S.C. § 1357(a)(3); see also 5 C.F.R. § 287.1(c). In all other respects, the allegations of the second sentence of the unnumbered paragraph are denied.

1. The United States lacks sufficient information to admit or deny the allegations contained in this paragraph and, therefore, denies the allegations.

2. The United States lacks sufficient information to admit or deny the allegations contained in this paragraph and, therefore, denies the allegations.

3. The United States lacks sufficient information to admit or deny the allegations contained in this paragraph and, therefore, denies the allegations.

4. In response to the allegations of Paragraph 4, Defendant admits that it is the United States. Additional allegations in this paragraph are conclusions of law to which no response is required.

## Jurisdiction

5. The allegations of Paragraph 5 are conclusions of law to which no response is required. In further response, Defendant admits that 28 U.S.C. § 1491 is the principal statute conferring jurisdiction on the United States Court of Federal Claims to hear Fifth Amendment takings claims.

## Operative Facts

6. In response to the allegations in the first sentence of Paragraph 6, Defendant admits that the parcels that comprise the Subject Property are contiguous. With respect to the remaining allegations, Defendant lacks sufficient knowledge or information to form a belief as to the truth or falsity of the allegations.

7. In response to the allegations of the first two sentences of Paragraph 7, Defendant admits that in 1990 it began construction of a steel fence made of steel landing mats, approximately 10-12 feet tall, along the border between the United States and Mexico in the vicinity of San Diego, California. Construction began at the intersection of the border with the Pacific Ocean, and progressed eastward approximately 14 miles, terminating near the eastern edge of the Subject Property. Construction of this fence, which is referred to as the "Primary Fence," was completed in

1993. In 1994, as part of what was called "Operation Gatekeeper," agent staffing levels in the San Diego area were increased and temporary portable lighting was utilized to deter and detect unauthorized aliens. Sensors have been implanted in areas of the Subject Property since the 1980s and were increased with Operation Gatekeeper in 1994.

In response to the allegations of the third sentence of Paragraph 7, Defendant avers that, in 1996, two additional fences and two roads were authorized to be constructed adjacent to the Primary Fence, including electronic surveillance equipment, to create what would be called the Border Infrastructure System ("BIS"). Construction of the BIS began in 1996; at present approximately 9 miles of what will eventually be 14 miles has been constructed. There is approximately 3 1/2 miles between the western terminus of the fence and the Pacific Ocean that has not yet been completed. The eastern terminus of the Secondary Fence, completed in 2001, is presently located near the western edge of Parcel 3 of the Subject Property; approximately 1 mile remains to be constructed. Between the Primary and Secondary Fences there is an all-weather road. In addition, a graded, gravel or stone road runs immediately to the north of the Secondary Fence. Ultimately, a third chain link fence will be constructed to

the north of the Secondary Fence, marking the boundary of the government-acquired property on which the fences are constructed.

In further response to the allegations of sentences 3 and 6 of Paragraph 7, Defendant avers that construction of the final approximately 1 mile of the BIS, which includes the Secondary Fence, is scheduled to begin property acquisition and early construction activities in Fiscal Year 2008. Ultimately, the BIS will extend approximately 14 miles along the border from the Pacific Ocean eastward. When completed, the fence will end at a point roughly approximate with the eastern border of the Subject Property.

In response to the allegations of the fourth sentence of Paragraph 7, Defendant avers that the number of illegal immigrants apprehended in San Diego County decreased from 531,889 in Fiscal Year 1993, to 138,608 in Fiscal Year 2004.

In response to the allegations of the fifth sentence of Paragraph 7, Defendant avers that the purpose of the BIS is to deter illegal crossings in the areas where they are most common. See P.L. 104-208, Section 102.

8. In response to the allegations of the first sentence of Paragraph 8, Defendant admits that the BIS has been effective in reducing, but not eliminating, illegal border crossings in the area where it has been

constructed; Defendant specifically denies that the fence was designed to channel illegal immigrants onto the Subject Property and that the border fences have the effect of channeling illegal immigrants onto the Subject Property.

In response to the allegations of the second sentence, Defendant admits that illegal aliens have been apprehended on the Subject Property since the beginning of immigration enforcement in the early part of this century, as occurs in most areas adjacent to the border, and that the aliens are removed from the property in vans and buses. The number of aliens apprehended on the Subject Property and in the vicinity of the Subject Property increased as a result of Operation Gatekeeper in 1994, and has decreased since that era. Plaintiffs' allegations that "Border Patrol vehicles speed across Plaintiffs' properties" is vague and for that reason Defendant is unable to respond to it.

In response to the allegations of the fourth sentence, Defendant admits that on one occasion, Border Patrol agents constructed a temporary shelter on the top of a hill located on the Subject Property. The shelter was casually constructed of tents, tarps, surplus wood, and landing mats for the purpose of providing shelter for the agents during periods of rain or

excessive sun. The shelter was constructed in approximately 1995-1998 and was disassembled and removed from the property in approximately 2003. In further response to the allegations of the fourth sentence, Defendant admits that since at least 1994 it has placed portable floodlights at various temporary locations on the Subject Property for the purpose of deterrence and to assist in the visibility of Border Patrol operations.

9. The allegations of Paragraph 9 are conclusions of law to which no response is required; to the extent matters of fact are alleged, they are denied.

10. In response to the allegations of Paragraph 10, Defendant admits that just compensation has not been paid to Plaintiffs for the taking alleged in the complaint. In further response, Defendant avers that Plaintiffs or related business entities were paid just compensation as part of the direct condemnation of the land underlying the portion of the BIS that was constructed adjacent to Plaintiffs' Parcel 1. In addition, Plaintiffs or related business entities will be paid just compensation for the future proposed condemnation of additional property on which the BIS will be located adjacent to Plaintiffs' Parcel 3.

11. The allegations of Paragraph 11 are a characterization of

Plaintiffs' claims to which no response is required.

**Claim for Relief**
**Just Compensation for Property Taken**

12. The allegations of Paragraph 12 are conclusions of law to which no response is required.

13. In response to the allegations of Paragraph 13, Defendant admits that just compensation has not been paid to Plaintiffs for the taking alleged in the complaint. In further response, Defendant avers that Plaintiffs or related business entities were paid just compensation as part of the direct condemnation of the land underlying the portion of the BIS that was constructed adjacent to Plaintiffs' Parcel 1. In addition, Plaintiffs or related business entities will be paid just compensation for the future proposed condemnation of additional property on which the BIS will be located adjacent to Plaintiffs' Parcel 3.

In further response to the allegations of Paragraph 13, Defendant denies that Plaintiffs' property has been taken for public use.

14. The allegations of Paragraph 14 are conclusions of law to which no response is required; to the extent matters of fact are alleged, they are denied, and Defendant specifically denies that Plaintiffs have been damaged or are entitiled to just compensation for the taking alleged in the

complaint. The balance of Paragraph 14 is a characterization of Plaintiffs' complaint to which no response is required.

15. Plaintiffs' Complaint does not contain a Paragraph 15, and no response is therefore required.

16. The allegations of Paragraph 16 are conclusions of law to which no response is required; to the extent matters of fact are alleged, Defendant lacks sufficient knowledge or information to form a belief as to the truth or falsity of the allegations.

## GENERAL DENIAL

The United States denies any allegations of the Complaint, whether express or implied, that are not specifically admitted, denied or qualified herein.

## AFFIRMATIVE DEFENSES

1. Plaintiffs assert claims that are barred, in whole or in part, by the Statute of Limitations. 28 U.S.C. § 2501.

2. Plaintiffs assert claims that are barred, in whole or in part, by the doctrines of laches and equitable estoppel.

3. Plaintiffs fail to state a claim upon which relief can be granted.

WHEREFORE, the United States denies that Plaintiffs are entitled to

the relief prayed for, or to any relief whatsoever, and requests that this action be dismissed with prejudice, that judgment be entered for the United States and that the Court award to the United States all costs and such other and further relief as the Court may allow.

Dated: August 2, 2006. Respectfully submitted,

SUE ELLEN WOOLDRIDGE
Assistant Attorney General
Environment and Natural Resources Division

/s/ Susan V. Cook
______________________________
SUSAN V. COOK
Senior Trial Attorney
E. KENNETH STEGEBY
Trial Attorney
Natural Resources Section
Environment & Natural Resources Division
United States Department of Justice
P.O. Box 663
Washington, DC 20044-0663
(202) 305-0470
(202) 305-0506 (Fax)
Email: susan.cook@usdoj.gov

OF COUNSEL:
Melissa Erny
A. Ted Kundrat
U.S. Customs and Border Protection
Indianapolis, Indiana 46278

347115.1