IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| OTAY MESA PROPERTY L.P., et al. | |
| Plaintiffs, | No. 06-167 L |
| v. | Hon. Lawrence M. Baskir |
| UNITED STATES, | |
| Defendant. | |

**MEMORANDUM SUPPORTING**
**PLAINTIFFS' UNOPPOSED MOTION TO AMEND COMPLAINT**

Pursuant to RCFC 15(a), Plaintiffs Otay Mesa Property L.P., Rancho Vista Del Mar, and Otay International LLC, move to amend their Complaint to increase the number of acres alleged to have been taken, from 750 acres to approximately 1,300 acres. Specifically, Plaintiff Otay Mesa Property L.P. seeks to amend the complaint to increase the number of acres taken from 75 to 154.55 acres. Plaintiff Rancho Vista Del Mar seeks to increase the number of acres taken from 514 to 736.14 acres. Plaintiffs also seek to add two related entities as Plaintiffs, D & D Landholdings and International Industrial Park, Inc., both of which own land adjacent to the subject property that has also been taken by Defendant's actions at issue in this

lawsuit. Specifically, D & D Landholdings owns 147.84 acres, and International Industrial Park, Inc. owns 96.27 acres. All of the additional land to be added to this lawsuit is immediately adjacent to the subject property.

Plaintiffs' Motion to Amend its Complaint should be granted for three reasons. First, this case is at an early stage and discovery has just begun.[1] The parties have not noticed any depositions, and a trial is not scheduled. Therefore, the inclusion of these additional acres and the two related entities as Plaintiffs in this lawsuit at this early point in the litigation will not in any way slow down the progress the parties have been making in preparing this case for resolution by this Court, nor in any way prejudice the Defendant. Second, this amendment is based on the same operative facts as those plead in the original Complaint and raises no new legal theories of liability or recovery. Therefore, Defendant will not be prejudiced by this amendment. Finally, the addition of approximately 550 acres of land and two additional Plaintiffs, D & D Landholdings and International Industrial Park, Inc., will not unnecessarily burden or prejudice Defendant in its preparation of the defense of this case. The

[1] The parties are currently discussing an enlarged time for completing discovery in this case.

additional acres of land are immediately adjacent to the subject property, and the additional entities are owned by the same people who own the entities that are the Plaintiffs in the original complaint.

Therefore, for these reasons, the amendment is timely, the amendment is based on the same operative facts and legal theories, and the ownership of the additional land and Plaintiff entities are identical to those already in this lawsuit, Plaintiffs urge this Court to grant this motion to amend the Complaint.

**Factual Background**

In the early 1990's, the United States began construction of the San Diego Border Primary Fence that now stretches from the Pacific Ocean 14 miles eastward to the Plaintiffs' properties. *See Exhibit A*. The San Diego County border Primary Fence begins at the Pacific Ocean. It is eleven feet high and is made of steel matting.

In 2001, the United States completed construction of nine miles of the Secondary Fence, which runs parallel to the Primary Fence. The Secondary Fence, which is made of steel mesh, begins three miles from the Pacific Ocean, and travels eastward, parallel to and approximately130-150 feet north of the Primary Fence; the Secondary Fence currently ends at the western terminus of the

74.55-acre parcel of land owned by Otay Mesa Property. *See Exhibit A*. The United States is currently constructing one additional mile of the Secondary Fence, extending it further east, to the eastern terminus of the 74.55-acre parcel of land owned by Otay Mesa Property. *See Exhibit A*.

The direct, foreseeable, and intended effect of Defendant's border control fencing system and the completion of the Secondary Fence, was to channel illegal immigrants crossing the border from Mexico, eastward away from San Diego, and onto the Plaintiffs' properties, where United States Border Patrol agents can detain, arrest, and deport individuals who have entered the United States illegally. It is completion of this Secondary Fence that gives rise to the unconstitutional taking alleged in this case.

**Facts Giving Rise to This Amendment**

Since the original Complaint was filed in this case, Border Patrol activity has expanded onto lots that are contiguous to the parcels that are the subject of the original Complaint, some of which are owned by related entities. *Exhibit C* (Wick Decl. ¶ 5.) Beginning in 2001, the Border Patrol's activity on the properties escalated to such a degree that the Plaintiffs were no longer welcome on their own

land. Recently, the Defendant has enlarged its activities to encompass even more of the Plaintiffs' land. Indeed, on August 8, 2006, Darryl Griffin, Chief Patrol Agent for the United States Customs and Border Protection, demanded access to a fenced-off portion of the Plaintiffs' property, and threatened that "if access is required and we do not have the necessary keys, we may have no choice but to cut your chain and place a lock of our own…." *See Exhibit B*. Border Patrol agents routinely chase the Plaintiffs off of their own property, and some agents have even told the Plaintiffs' representatives that the United States owns the subject property. *Exhibit C* (Wick Decl. ¶ 5.) Finally, on November 6, 2006, the Plaintiffs discovered that the Border Patrol had pitched tents on their property, and was in fact using their land as a training facility for its agents. *Exhibit C* (Wick Decl. ¶ 5.) The Border Patrol's activity has become so invasive that tenants are even afraid to lease the Plaintiffs' land. *Exhibit C* (Wick Decl. ¶ 5.)

The Border Patrol agents have grown so bold that they have expanded their activities to affect additional property owned by Otay Mesa Property L.P. and Rancho Vista Del Mar. Defendant's actions

now affect property owned by D & D Landholdings and International Industrial Park.

**Procedural Background**

Plaintiffs filed their Complaint on March 3, 2006. Defendant filed its Answer on August 2, 2006. The parties filed their Joint Preliminary Status Report on September 19, 2006. The preliminary status conference was held on October 31, 2006. During the preliminary status conference, the Court ordered that the claims of the three Plaintiffs, Otay Mesa Property L.P., Rancho Vista Del Mar, and Otay International LLC, be severed and assigned separate docket numbers. Order at 1 (Nov. 1, 2006). The newly created cases were then consolidated for all purposes under the lead case, *Otay Mesa Property L.P. v. United States*. Order at 2 (Nov. 1, 2006).

The parties are currently engaging in discovery, which is scheduled to conclude on February 9, 2007.

## ARGUMENT

## I. Standards for Granting Motion to Amend Complaint

RCFC 15 states as follows:

> (a) Amendments. . . . [A] party may amend the party's pleading only by leave of court or by written consent of the adverse party; and

> leave shall be freely given when justice so requires. . . .
>
> (d) Supplemental Pleadings. Upon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit the party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented. Permission may be granted even though the original pleading is defective in its statement of a claim for relief or defense. If the court deems it advisable that the adverse party plead to the supplemental pleading, it shall so order, specifying the time therefor.

RCFC 15(a), (d).[2]

Courts construing RCFC 15 have held that "leave shall be freely given when justice so requires." *Scott Timber Co. v. United States*, 44 Fed. Cl. 170, 181 (1999); *see also Mitsui Foods, Inc. v. United States*, 867 F.2d 1401, 1403 (Fed. Cir. 1989) (holding that the grant or denial of an opportunity to amend pleadings should be exercised liberally to permit such amendments). Indeed, the Supreme Court has stated that refusing to grant an amendment without any "justifying reason" is an abuse of discretion:

[2] Since RCFC 15 is similar in text to Rule 15 of the Federal Rules of Civil Procedure, case law construing the Federal Rules of Civil Procedure may be used to interpret the Rules of the Court of Federal Claims. *Hickman v. United States,* 43 Fed. Cl. 424, 439 (1999).

> Of course, the grant or denial of an opportunity to amend is within the discretion of the . . . Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely an abuse of that discretion and inconsistent with the spirit of the Federal Rules.

*Foman v. Davis,* 371 U.S. 178, 182 (1962).

In *Foman v. Davis,* the Supreme Court identified five factors for determining if a motion to amend should be granted: undue delay; bad faith or dilatory motive on the part of the movant; repeated failure to cure deficiencies by amendments previously allowed; undue prejudice to the opposing party; and futility. *Id.* Defendant, as the nonmoving party, bears the burden of showing that it will be prejudiced by this amendment. *Scott Timber Co. v. United States*, 44 Fed. Cl. 170, 182 (1999).

The touchstone of determining a motion to amend a complaint is whether the amendment will prejudice the nonmoving party. *Cornell & Co. v. Occupational Safety and Health Review Comm'n,* 573 F.2d 820, 823 (3d Cir. 1978) ("[i]t is well-settled that prejudice to the non-moving party is the touchstone for the denial of an amendment"); *United States v. Hougham,* 364 U.S. 310, 316 (1960) (rule 15 of the Federal Rules of Civil Procedure was designed to facilitate the

amendment of pleadings except where prejudice to the opposing party would result).

"[T]he non-movant has the burden of showing that 'it will be severely disadvantaged or incapable or presenting facts or evidence' on the new issue." *Scott Timber Co.*, 44 Fed. Cl. at 182 (quoting *Crosky v. United States,* 24 Cl. Ct. 420, 422 (1991)); *see also Cornell & Co.,* 573 F.2d at 824-25 (amendment was prejudicial where it drastically changed legal and factual matters in dispute, preventing defendant from securing testimony necessary to assert affirmative defense).

This Court has held that the nonmoving party is prejudiced if the amendment introduces new legal theories that require the non-movant to conduct extensive research shortly before trial. *State of Alaska v. United States,* 15 Cl. Ct. 276, 279-280 (1988). But, as the court has also held, the simple inconvenience of having to respond to an amended complaint is not prejudice for purposes of denying a motion to amend. *Scott Timber Co.,* 44 Fed. Cl. at 182; *see also Tefft v. Seward,* 689 F.2d 637, 639 (6th Cir. 1982) (where the facts as set forth in [plaintiff's] original complaint would support [the amended]

cause of action, the amended complaint is not so different as to cause prejudice to the defendants).

Here, Defendant cannot meet its burden of showing that the proposed amendment would prejudice it in any way; the amendment is timely; the amendment raises no new legal theories; and, the claims of the additional acres of land and Plaintiffs involve the same owners, the same operative facts, and land adjacent to the same parcels as those in the original complaint. Accordingly, Plaintiffs' motion to amend should be granted.

## II. Because This Litigation Is at an Early Stage, This Amendment Will Not Prejudice Defendant

Delay, without some showing of prejudice, bad faith, or futility is insufficient to deny a motion to amend a complaint. *State of Alaska,* 15 Cl. Ct. at 280 (*excessive* delay in certain circumstances can be a reason for such denial; however mere delay, without some showing of prejudice, bad faith, or futility is insufficient to deny a motion to amend a complaint). In this case, however, there is no delay whatsoever in seeking the amendment. The Amended Complaint increases the number of acres of taken property due to Border Patrol activity that occurred between August and November 2006. The facts of this activity were not known when the original Complaint was

filed, and some activity occurred as recently as a few weeks ago. The Plaintiffs have proposed to amend their Complaint immediately following these events. Thus, there has been no delay in seeking the amendment, and the motion should be granted. *See State of Alaska,* 15 Cl. Ct. at 276 (court granted amendment even though 13 months had passed since filing the original complaint, where defendant could not show deliberate tardiness by plaintiff).

Likewise, this lawsuit is in its initial stages. Written discovery has just been exchanged; no depositions, however, have even been noticed. Discovery is set to close on February 9, 2007; thus, this case is months away from trial on the merits. Therefore, as the court noted in *System Fuels, Inc. v. United States,* 65 Fed. Cl. 163 (2005):

> In this case, the complaint identifies that System Fuels filed suit both on its own behalf and on behalf of Entergy Arkansas, and the takings claim arose out of that same set of transactions and occurrences that led to the contract claim and good-faith-and-fair-dealing claim. Given these circumstances, the government had sufficient notice that it faced a broader claim, and it would not be prejudiced by relation back.

*Id.* at 171; *see also Scott Timber Co. v. United States*, 44 Fed. Cl. 170, 182 (1999) ("Nor do plaintiff's amendments come on the eve of trial, like many of the motions to amend that the courts have found it necessary to deny.")

## III. This Amendment Raises No New Legal Theories of Liability or Recovery

Prejudice can result where a proposed amendment raises a new legal theory that would require the gathering and analysis of facts not already considered by the opposing party. *Johnson v. Oroweat Foods Co.,* 785 F.2d 503, 510 (4th Cir. 1986). This basis for finding prejudice, however, essentially applies where the amendment is offered shortly before or during trial. *Id.; see also Roberts v. Arizona Bd. of Regents*, 661 F.2d 796, 798 (9th Cir. 1981) (denying motion to amend did not constitute abuse of discretion where amendment including new claim was offered after discovery was virtually complete and defendant's motion for summary judgment was pending before the court).

Here, the Amended Complaint does not introduce any new legal theories nor does it change the factual basis of the complaint; the same operative facts support the original and amended complaint. Rather, the amendment merely increases the number of acres (all of which are adjacent to one another) of taken property, owned by additional, but related, Plaintiffs. Thus, the proposed amendment will not require the Defendant to conduct extensive additional research as the Amended Complaint is based on the

identical legal theory to that in the Complaint. The parties are currently engaging in discovery. Although some additional factual discovery may arise due to the increase in acreage that would be the subject of the litigation, this is not sufficient to show prejudice, especially since the discovery phase is scheduled to continue for two more months, and a trial date has not been set. *See State of Alaska,* 15 Cl. Ct. at 280 (court found that any additional discovery was simply an inconvenience, not prejudice, particularly since no trial date had been set).

## IV. The Additional Acres of Land and Entities Are Closely Related to the Original Subject Property and the Original Plaintiffs; Therefore, This Amendment Will Not Unduly Burden or Prejudice Defendant

The general rule is that "amendments to pleadings may relate back to include new parties when the claims of both parties are 'sufficiently closely related to warrant the conclusion that the government received adequate notice of the possibility that it might have to defend against a broader claim.'" *System Fuels, Inc. v. United States*, 65 Fed. Cl. 163, 171 (2005) (quoting *Barron Bancshares, Inc. v. United States*, 366 F.3d 1360, 1369 (Fed. Cir. 2004); *see also* RCFC 15(c).

In this case, the operative facts presented in the Amended Complaint are identical to those presented in the original Complaint. They merely occur on additional property contiguous to the subject property of the original Complaint, which is owned by related entities. *Exhibit C* (Wick Decl. ¶ 5.) All of the Plaintiffs, Otay Mesa Property L.P., Rancho Vista Del Mar, Otay International LLC, D & D Landholdings, and International Industrial Park, are subsidiary entities of National Enterprises, Inc. *Exhibit C* (Wick Decl. ¶ 6.)

Moreover, Defendant has been on notice that the Complaint might be amended since the date of the filing of the parties' Joint Preliminary Status Report. The Joint Preliminary Status Report notes that Defendant's activities had begun to interfere with the use of additional land owned by the Plaintiffs, and that the Plaintiffs may seek to amend their Complaint to allege a taking of this additional land. Pls.' Joint Prelim. Status Report at 3 n.1 (Sept. 19, 2006). The Defendant therefore received notice that it may have to defend against a broader claim. Thus, the amendment will not unduly burden or prejudice the Defendant, and the amendment should be allowed.

## Conclusion

For the reasons set forth above, the Plaintiffs ask this Court to grant their motion to amend their Complaint.

Respectfully submitted,

s/ Roger J. Marzulla
Roger J. Marzulla
Nancie G. Marzulla
MARZULLA & MARZULLA
1350 Connecticut Ave., N.W.
Suite 410
Washington, DC 20036
(202) 822-6760
(202) 822-6774 (facsimile)

Dated: December 4, 2006

Counsel for Plaintiffs

# Exhibit A


END OF SECONDARY FENCE
START OF OTAY MESA PROPERTY, L.P.'S
PROPERTY
APPROXIMATE SITE OF
BORDER PATROL BUILDING
(AFTER TAKEN DOWN)
PRIMARY FENCE CONTINUES
OUTSIDE OF OTAY MESA
PROPERTY, L.P.'S PROPERTY

# Exhibit B

11 Boswell Road
Chula Vista, CA 91914-3519

U.S. Customs and
Border Protection

August 8, 2006

International Industrial Corporation
5440 Morehouse Drive, Suite 4000
San Diego, California 92121

Dear Sir or Madam:

This is to request your immediate attention to the following urgent matter affecting homeland security and border safety. We are deeply concerned about the recent actions taken on your Otay Mesa land to block access by the Border Patrol to the Otay Truck Trail from Alta Road. This access is vital to the Border Patrol's operational control of Otay Mountain and the Otay border area in general, and we seek your cooperation in restoring access as soon as possible so as to avoid an emergency situation.

As you may be aware, the Border Patrol is a uniformed law enforcement component of U.S. Customs and Border Protection, within the United States Department of Homeland Security. Our priority mission is to prevent terrorists and terrorist weapons from entering the country, while continuing to perform our traditional enforcement mission to prevent aliens, smugglers, drugs, and other contraband from illegally crossing the international border between the ports of entry. Our legal authority is as follows.

Pursuant to Section 287(a)(3) of the Immigration and Nationality Act, as amended, Border Patrol Agents are authorized to access private lands within 25 miles of the border for the purpose of patrolling the border to prevent the illegal entry of aliens into the United States. 8 U.S.C. 1357(a)(3); *see also*, 19 U.S.C. 1595(b)(entry into or upon, or passing through private lands authorized in the discharge of official duties). Our patrol authority includes conducting such activities as are customary or reasonable and necessary to prevent the illegal entry of aliens into the United States. *See*, 8 C.F.R. 287.1(c). It is not only customary, but reasonable and necessary for our vehicles to access the Otay Truck Trail via Alta Road in order to effectively patrol Otay Mountain and the Otay border area in general, without having to drive around the mountain in order to do so.

In order to restore the Border Patrol's access to the Otay Truck Trail via Alta Road, we respectfully request that you provide duplicate keys to the locked gate recently installed on the access road to the Otay Truck Trail just east of Alta Road on your property. We will gladly replace the lock and provide you with keys if that is more convenient for you. However, please be advised that if access is required and we do not have the necessary keys, we may have no choice but to cut your chain and place a lock of our own on the same in order to access the Otay Truck Trail in performance of official duties.

We are eager to work in cooperation with you as we achieve operational control of the border, and we remain hopeful that regular patrols of the border will be beneficial to you in that illegal entries and illegal activity on your land may ultimately be reduced or eliminated. However, in order to fulfill our important homeland security responsibilities, please be advised that we intend to exercise our statutory authority to access the Otay Truck Trail as necessary.

Please contact my office to arrange for exchange of keys and/or replacement of the lock on your gate that continues to block the access road to the Otay Truck Trail from Alta Road. This is an urgent matter requiring your immediate attention, and we look forward to hearing from you as soon as possible.

Sincerely,

Darryl Griffen
Chief Patrol Agent

# Exhibit C

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| OTAY MESA PROPERTY L.P., et al. | |
| Plaintiffs, | No. 06-167 L |
| v. | Hon. Lawrence M. Baskir |
| UNITED STATES, | |
| Defendant. | |

**DECLARATION OF DAVID WICK**

I, David Wick, pursuant to 28 U.S.C. § 1746, hereby declare:

1. I am the President of National Enterprises, Inc., and held that position during the times relevant to the claim stated herein. National Enterprises, Inc. is an affiliated entity of Otay Mesa Property L.P., Rancho Vista Del Mar, Otay International LLC, D & D Landholdings, and International Industrial Park.

2. I have personal knowledge of the Border Patrol's activity on the properties of Otay Mesa Property L.P., Rancho Vista Del Mar, Otay International LLC, D & D Landholdings, and International Industrial Park.

3. In 2001, the United States completed construction of nine miles of the Secondary Fence, which runs parallel to a Primary

Fence. The Secondary Fence, which is made of steel mesh begins three miles from the Pacific Ocean, and travels eastward, parallel to and 130 feet north of the Primary Fence; the Secondary Fence currently ends at the western terminus of the 74.55-acre parcel of land owned by Otay Mesa Property. The United States is currently constructing one additional half mile of the Secondary Fence, extending the Secondary Fence further east, to the eastern terminus of the 74.55-acre parcel of land owned by Otay Mesa Property. Attached as *Exhibit 1* is a map indicating the location of the Primary and Secondary Fences on our properties.

4. The direct, foreseeable, and intended effect of the United States' border control fencing system and the completion of the secondary fence, was to channel illegal immigrants crossing the border from Mexico, eastward away from San Diego, and onto our properties, where United States Border Patrol agents can detain, arrest, and deport individuals who have entered the United States illegally. It is the government's funneling of illegal aliens onto our property, and the Border Patrol's increased activities to round up and capture these individuals, that made use of our property untenable.

5. Since the original Complaint was filed in this case, Border

Patrol activity has further expanded onto lots that are contiguous to the parcels that are the subject of the original Complaint, some of which are owned by related entities. The Border Patrol's activity on the properties has escalated to such a degree that we are no longer welcome on our own land. For example, on August 8, 2006, Darryl Griffin, Chief Patrol Agent for the United States Customs and Border Protection, demanded access to a fenced-off portion of our property, and threatened that "if access is required and we do not have the necessary keys, we may have no choice but to cut your chain and place a lock of our own...." On August 30, 2006, a Border Patrol agent even chased me while I was on our property, demanding proof that I was entitled to be there. Also, on November 6, 2006, I discovered that the Border Patrol had pitched tents on our property, and was using our land as a training facility for their agents. The Border Patrol's activity has become so invasive that tenants refuse to even lease our property, concerned that the Border Patrol's activities would make their proposed use of the property likewise impossible.

6. The Border Patrol is now using additional parcels of land owned by Otay Mesa Property L.P., Rancho Vista Del Mar, D & D Landholdings, a limited partnership, and International Industrial Park,

Inc. D & D Landholdings and International Industrial Park are subsidiaries of National Enterprises, Inc.

7. Attached as *Exhibit 2* is a map identifying the additional property on which the Border Patrol is now detaining and arresting aliens, chasing us and demanding proof that we are entitled to be there, and staging training facilities. This map was prepared under my direction.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on December 4, 2006

s/ David Wick
David Wick

# Exhibit 1


END OF SECONDARY FENCE
START OF OTAY MESA PROPERTY, L.P.'S
PROPERTY
APPROXIMATE SITE OF
BORDER PATROL BUILDING
(AFTER TAKEN DOWN)
PRIMARY FENCE CONTINUES
OUTSIDE OF OTAY MESA
PROPERTY, L.P.'S PROPERTY

# Exhibit 2


OTAY MESA RD
ALTA RD
ENERGY CENTER WAY
ACCESS RD.
LOOP RD
INTERNATIONAL BOUNDARY
MEXICO
PUBLIC DOMAIN
SEC 30
SEC 29
050
080