IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| OTAY MESA PROPERTY L.P., et al. | |
| Plaintiffs, | No. 06-167 L |
| v. | Hon. Lawrence M. Baskir |
| UNITED STATES, | |
| Defendant. | |

**AMENDED COMPLAINT FOR JUST COMPENSATION**

This is a suit by five landowners under the Fifth Amendment of the United States Constitution to recover just compensation for the physical taking of approximately 1300 acres of prime development land located in eastern San Diego County, California, near the border with Mexico. The United States, acting through agents for the Customs and Border Protection, has physically entered onto Plaintiffs' land continuously for several years, has intentionally channeled illegal immigrants onto Plaintiffs' land for roundup and arrest, and has constructed a permanent shelter for Border Patrol officers and other facilities on Plaintiffs' property. In addition, the Border Patrol has demanded access to fenced-off portions of the Plaintiffs' property, has chased the Plaintiffs of their own land, and

has been using the Plaintiffs' property as a training facility to train staff.

**Parties**

1. Plaintiff Otay Mesa Property L.P. is a limited partnership organized under the laws of the State of California and the owner in fee of several parcels of unimproved land in the Otay Mesa area of San Diego County, amounting to 154.55 acres. One of its parcels, which is shown in aqua on *Exhibit A*, is zoned for landfill, international racetrack, and industrial use, and is poised for immediate development. Another of its parcels, which is shown in orange on *Exhibit A*, is zoned for heavy to light industrial use, and is in various stages of grading development.

2. Plaintiff Rancho Vista Del Mar is a corporation organized under the laws of the State of California and the owner in fee of several parcels of unimproved land in the Otay Mesa area of San Diego County, amounting to 736.14 acres. One of its parcels, which is shown in blue on *Exhibit A*, is zoned for landfill, international racetrack, and industrial use, and is poised for immediate development. Another of its parcels, which is shown in red on *Exhibit*

*A*, is zoned for heavy to light industrial use, and is in various stages of grading development.

3. Plaintiff Otay International LLC is a limited liability corporation organized under the laws of the State of California and the owner in fee of an approximately 160-acre parcel of unimproved land in the Otay Mesa area of San Diego County. This parcel, which is shown in yellow on *Exhibit A*, is zoned for landfill, international racetrack, and industrial use, and is poised for immediate development.

4. Plaintiff D & D Landholdings is a limited partnership organized under the laws of the State of California and the owner in fee of several parcels of land in the Otay Mesa area of San Diego County, amounting to 147.84 acres. These parcels, which are shown in pink on *Exhibit A*, are heavy to light industrial use, and are in various stages of grading development.

5. Plaintiff International Industrial Park, Inc. is a corporation organized under the laws of the State of California and the owner in fee of a 96.27-acre parcel of land in the Otay Mesa area of San Diego County. This parcel, which is shown in green on *Exhibit A*, is zoned

for heavy to light industrial use, and is in various stages of grading development.

6. Defendant, United States of America, is a republic formed pursuant to the Constitution of the United States, and exercising the powers described therein subject to certain limitations, including the Fifth Amendment to the United States Constitution, which prohibits the taking of private property for public use without payment of just compensation.

**Jurisdiction**

7. This Court has jurisdiction of this case under 28 U.S.C. § 1491 (the Tucker Act) as a "claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department or upon any express or implied contract with the United States . . . ."

**Operative Facts**

8. The parcels owned by these five Plaintiffs are contiguous, and are designated on the Regional Plan for San Diego County for development either as landfill and international racetrack, or heavy to light industrial use. All five Plaintiffs acquired their property for the purpose of developing it, and have agreed to jointly

develop their properties as a landfill and an international racetrack, or heavy to light industry, both highly valuable uses.

9. In the early 1990s, the United States began construction of the San Diego Border Primary Fence that now stretches from the Pacific Ocean 14 miles eastward to Plaintiffs' properties, where it terminates as shown on *Exhibit B*. The Primary Fence begins at the Pacific Ocean. It is eleven feet high and is made of steel matting and is presently outfitted with infrared surveillance cameras and stadium lighting. According to the U. S. Border Patrol, this barrier has cut the number of illegal immigrants caught from about 530,000 in 1993 to 127,000 in 2004.

10. In 2001, the United States completed construction of nine miles of the Secondary Fence, which runs parallel to the Primary Fence. The Secondary Fence, which is made of steel mesh, begins three miles from the Pacific Ocean, and travels eastward, parallel to and approximately 130-150 feet north of the Primary Fence; the Secondary Fence currently ends at the western terminus of the 74.55-acre parcel of land owned by Otay Mesa Property. *See Exhibit B.* The United States is currently constructing one additional half mile of the Secondary Fence, extending it further east, to the eastern

terminus of the 74.55-acre parcel of land owned by Otay Mesa Property. *See Exhibit B.*

11. The direct, foreseeable, and intended effect of Defendant's border control fencing system and the completion of the Secondary Fence, was to channel illegal immigrants crossing the border from Mexico, eastward away from the city of San Diego, and onto the Plaintiffs' properties, where United States Border Patrol agents can detain, arrest, and deport these individuals.

12. The Border Fence has operated as it was designed, channeling illegal immigrants eastward away from the city onto the Plaintiffs' properties, where they can be rounded up, arrested, and deported. Since the Fence has not yet been completed, however, it now terminates on Plaintiffs' properties and, in consequence, the roundup and arrest of illegal aliens takes place on Plaintiffs' properties almost daily. Border Patrol vehicles speed across Plaintiffs' properties, and vans or buses are brought in to haul away the illegal immigrants. The Border Patrol has also erected various structures used in connection with its activities on Plaintiffs' property, including a wood shelter for its officers, and numerous portable generated floodlights and motion sensors, to further its activities.

13. Beginning in 2001, Border Patrol activity on the properties escalated to such a degree that the Plaintiffs were no longer welcome on their own land. Recently, the Defendant has enlarged its activities to encompass even more of the Plaintiffs' land. Indeed, on August 8, 2006, Darryl Griffin, Chief Patrol Agent for the United States Customs and Border Protection, demanded access to a fenced-off portion of the Plaintiffs' property, and threatened that "if access is required and we do not have the necessary keys, we may have no choice but to cut your chain and place a lock of our own…." See *Exhibit C*. Border Patrol agents routinely chase the Plaintiffs off of their own property, and some agents have even told the Plaintiffs' representatives that the United States owns the subject property. Finally, on November 6, 2006, the Plaintiffs discovered that the Border Patrol had pitched tents on their property, and was using the land as a training facility for its agents. The Border Patrol activity has become so invasive that tenants are even afraid to lease the Plaintiffs' land.

14. Thus, as a direct, foreseeable and proximate result of the United States' construction and operation of the Border Fence, Plaintiffs' property has been taken for public use.

15. Despite the mandatory requirement of the Fifth Amendment, Plaintiffs have not been paid just compensation for the property which the United States has taken.

16. At this time Plaintiffs are uncertain of the fair market value of the property taken. Plaintiffs will seek leave of this Court to amend this Complaint to conform to proof of fair market value at trial.

**CLAIM FOR RELIEF**
**JUST COMPENSATION FOR PROPERTY TAKEN**

17. The Constitution of the United States requires that Defendant United States pay to Plaintiffs just compensation for all property taken for public use.

18. To date, Defendant United States has paid nothing to Plaintiffs as compensation for the property it has taken for public use, in violation of the Constitution of the United States.

19. As a direct, foreseeable and proximate result of the acts of Defendant, Plaintiffs have been damaged in an amount as yet unascertained, equal to the just compensation due them under the Fifth Amendment, including interest thereon at a rate to be established by this Court. Plaintiffs will seek leave of Court to amend this complaint to conform to proof of such damages at trial.

20. As a further direct, foreseeable and proximate result of the taking of their property without just compensation, Plaintiffs have been required to and have retained the services of counsel to prosecute this action. Plaintiffs have incurred, and will incur, attorneys' fees, appraiser and expert witness fees, and costs and expenses of litigation in an amount as yet unascertained. Plaintiffs will seek leave of this Court to amend this complaint to conform to proof of such damages at trial.

**PRAYER FOR RELIEF**

WHEREFORE, each Plaintiff prays for relief as follows:

1. A money judgment equal to the just compensation owing to each Plaintiff for the permanent taking of its property for public use, together with interest thereon at the legal rate from the date of taking;

2. Reasonable attorneys' fees for the bringing of this action;

3. The expenses of appraisers and other experts reasonably required to prosecute this action, together with other costs of this suit; and

4. Such other and further relief as the Court may deem just.

Respectfully submitted,

s/ Roger J. Marzulla

Roger J. Marzulla
Nancie G. Marzulla
MARZULLA & MARZULLA
1350 Connecticut Ave., N.W.
Suite 410
Washington, DC 20036
(202) 822-6760
(202) 822-6774 (facsimile)

Dated: December 4, 2006

Counsel for Plaintiffs

# Exhibit A


OTAY MESA RD
ALTA
ENERGY CENTER WAY
ACCESS RD.
LOOP RD
INTERNATIONAL BOUNDARY
MEXICO
PUBLIC DOMAIN

# Exhibit B


END OF SECONDARY FENCE
START OF OTAY MESA PROPERTY, L.P.'S PROPERTY
APPROXIMATE SITE OF BORDER PATROL BUILDING (AFTER TAKEN DOWN)
PRIMARY FENCE CONTINUES OUTSIDE OF OTAY MESA PROPERTY, L.P.'S PROPERTY

# Exhibit C

11 Boswell Road
Chula Vista, CA 91914-3519

U.S. Customs and
Border Protection

August 8, 2006

International Industrial Corporation
5440 Morehouse Drive, Suite 4000
San Diego, California 92121

Dear Sir or Madam:

This is to request your immediate attention to the following urgent matter affecting homeland security and border safety. We are deeply concerned about the recent actions taken on your Otay Mesa land to block access by the Border Patrol to the Otay Truck Trail from Alta Road. This access is vital to the Border Patrol's operational control of Otay Mountain and the Otay border area in general, and we seek your cooperation in restoring access as soon as possible so as to avoid an emergency situation.

As you may be aware, the Border Patrol is a uniformed law enforcement component of U.S. Customs and Border Protection, within the United States Department of Homeland Security. Our priority mission is to prevent terrorists and terrorist weapons from entering the country, while continuing to perform our traditional enforcement mission to prevent aliens, smugglers, drugs, and other contraband from illegally crossing the international border between the ports of entry. Our legal authority is as follows.

Pursuant to Section 287(a)(3) of the Immigration and Nationality Act, as amended, Border Patrol Agents are authorized to access private lands within 25 miles of the border for the purpose of patrolling the border to prevent the illegal entry of aliens into the United States. 8 U.S.C. 1357(a)(3); *see also*, 19 U.S.C. 1595(b)(entry into or upon, or passing through private lands authorized in the discharge of official duties). Our patrol authority includes conducting such activities as are customary or reasonable and necessary to prevent the illegal entry of aliens into the United States. *See*, 8 C.F.R. 287.1(c). It is not only customary, but reasonable and necessary for our vehicles to access the Otay Truck Trail via Alta Road in order to effectively patrol Otay Mountain and the Otay border area in general, without having to drive around the mountain in order to do so.

In order to restore the Border Patrol's access to the Otay Truck Trail via Alta Road, we respectfully request that you provide duplicate keys to the locked gate recently installed on the access road to the Otay Truck Trail just east of Alta Road on your property. We will gladly replace the lock and provide you with keys if that is more convenient for you. However, please be advised that if access is required and we do not have the necessary keys, we may have no choice but to cut your chain and place a lock of our own on the same in order to access the Otay Truck Trail in performance of official duties.

We are eager to work in cooperation with you as we achieve operational control of the border, and we remain hopeful that regular patrols of the border will be beneficial to you in that illegal entries and illegal activity on your land may ultimately be reduced or eliminated. However, in order to fulfill our important homeland security responsibilities, please be advised that we intend to exercise our statutory authority to access the Otay Truck Trail as necessary.

Please contact my office to arrange for exchange of keys and/or replacement of the lock on your gate that continues to block the access road to the Otay Truck Trail from Alta Road. This is an urgent matter requiring your immediate attention, and we look forward to hearing from you as soon as possible.

Sincerely,

Darryl Griffen
Chief Patrol Agent