IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| OTAY MESA PROPERTY L.P., et al | ) | |
| Plaintiffs, | ) | No. 06-167 |
| v. | ) | Hon. Lawrence M. Baskir |
| UNITED STATES, | ) | |
| Defendant. | ) | |

**AMENDED COMPLAINT FOR JUST COMPENSATION**

This is a suit by three landowners under the Fifth Amendment of the United States Constitution to recover just compensation for the physical taking of approximately 1,050 acres of prime development land located in eastern San Diego County, California, near the border with Mexico. The United States, acting through agents for the Customs and Border Protection, has physically entered onto Plaintiffs' land continuously for several years, has intentionally channeled illegal immigrants onto Plaintiffs' land for roundup and arrest, and has constructed a permanent shelter for Border Patrol officers and other facilities on Plaintiffs' property. In addition, the

Border Patrol has chased Plaintiffs off their own land and has been using Plaintiffs' property as a training facility to train staff.

**Parties**

1. Plaintiff Otay Mesa Property L.P. is a limited partnership organized under the laws of the State of California, and the owner in fee of several parcels of unimproved land in the Otay Mesa area of San Diego County, amounting to 154.55 acres. One if its parcels, which is shown in purple on Exhibit A, is zoned for landfill, international racetrack, and industrial use, and is poised for immediate development. Another of its parcels, which is shown in red on Exhibit A, is zoned for heavy to light industrial use, and is in various stages of grading development.

2. Plaintiff Rancho Vista Del Mar is a corporation organized under the laws of the State of California, and the owner in fee of several parcels of unimproved land in the Otay Mesa area of San Diego County, amounting to 736.14 acres. One of its parcels, which is shown in orange on Exhibit A, is zoned for landfill, international racetrack, and industrial use, and is poised for immediate development. Its other parcels, which are shown in blue on Exhibit A,

are zoned for heavy to light industrial use, and are in various stages of grading development.

3. Plaintiff Otay International LLC is a limited liability corporation organized under the laws of the State of California, and the owner in fee of an approximately 160-acre parcel of unimproved land in the Otay Mesa area of San Diego County. This parcel, which is shown in green on Exhibit A, is zoned for landfill, international racetrack, and industrial use, and is poised for immediate development.

4. Defendant, United States of America, is a republic formed pursuant to the Constitution of the United States, and exercising the powers described therein subject to certain limitations, including the Fifth Amendment to the United States Constitution, which prohibits the taking of private property for public use without payment of just compensation.

**Jurisdiction**

5. This Court has jurisdiction of this case under 28 U.S.C. § 1491 (the Tucker Act) as a “claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation

of an executive department or upon any express or implied contract with the United States . . . ."

**Operative Facts**

6. The parcels owned by these three Plaintiffs are contiguous, and are designated on the Regional Plan for San Diego County for development either as landfill and international racetrack, or heavy to light industrial use. All three Plaintiffs acquired their property for the purpose of developing it, and have agreed to jointly develop their properties as a landfill or an international racetrack, a highly valuable use. They also intended to develop their other parcels with heavy to light industry.

7. In the early 1990s, the United States began construction of the San Diego Border Fence that now stretches from the Pacific Ocean 14 miles eastward to Plaintiffs' properties. The Primary Fence begins at the Pacific Ocean. It is 11 feet high and is made of steel matting, and is presently outfitted with infrared surveillance cameras and stadium lighting. According to the U.S. Border Patrol, this barrier has cut the number of illegal immigrants caught from about 530,000 in 1993 to 127,000 in 2004.

8. In 2001, the United States completed construction of nine miles of a Secondary Fence, which runs parallel to the Primary Fence. The Secondary Fence, which is made of steel mesh, begins three miles from the Pacific Ocean, and travels eastward, parallel to and approximately 130-150 feet north of the Primary Fence; the Secondary Fence currently ends at the western terminus of the 74.55-acre parcel of land owned by Otay Mesa Property. *See* Exhibit A. The United States is currently constructing one additional half mile of the Secondary Fence, extending it further east, to the eastern terminus of the 74.55-acre parcel of land owned by Otay Mesa Property.

9. The direct, foreseeable, and intended effect of Defendant's border control fencing system and the completion of the Secondary Fence, was to channel illegal immigrants crossing the border from Mexico, eastward away from the city of San Diego, and onto Plaintiffs' properties, where United States Border Patrol agents can detain, arrest, and deport these individuals.

10. The Border Fence has operated as it was designed, channeling illegal immigrants eastward away from the city onto Plaintiffs' properties, where they can be rounded up, arrested, and

deported. Since the Fence has not yet been completed, however, it now terminates on Plaintiffs' properties and, consequently, the roundup and arrest of illegal aliens takes place on Plaintiffs' properties almost daily. Border Patrol vehicles speed across Plaintiffs' properties, and vans or buses are brought in to haul away the illegal immigrants. The Border Patrol has also erected various structures used in connection with its activities on Plaintiffs' property, including a wood shelter for its officers and numerous portable generated floodlights, to further its activities.

11. Beginning in 2001, Border Patrol activity on the properties escalated to such a degree that Plaintiffs were no longer welcome on their own land. Recently, Defendant has enlarged its activities to encompass even more of Plaintiffs' land. Indeed, Border Patrol agents routinely chase Plaintiffs off their own property, and some agents have even told Plaintiffs' representatives that the United States owns the Subject Property. In addition, on November 6, 2006, Plaintiffs discovered that the Border Patrol had pitched tents on their property, and was using the land as a training facility for its agents. The Border Patrol activity has become so invasive that tenants are even afraid to lease Plaintiffs' land.

12. Thus, as a direct, foreseeable and proximate result of the United States' construction and operation of the Border Fence, Plaintiffs' property has been taken for public use.

13. Despite the mandatory requirement of the Fifth Amendment, Plaintiffs have not been paid just compensation for the property which the United States has taken.

14. At this time Plaintiffs are uncertain of the fair market value of the property taken. Plaintiffs will seek leave of this Court to amend this Complaint to conform to proof of fair market value at trial.

## CLAIM FOR RELIEF
## JUST COMPENSATION FOR PROPERTY TAKEN

15. The Constitution of the United States requires that Defendant United States pay to Plaintiffs just compensation for all property taken for public use.

16. To date, Defendant United States has paid nothing to Plaintiffs as compensation for the property it has taken for public use, in violation of the Constitution of the United States.

17. As a direct, foreseeable and proximate result of the acts of Defendant, Plaintiffs have been damaged in an amount as yet unascertained, equal to the just compensation due them under the Fifth Amendment, including interest thereon at a rate to be

established by this Court. Plaintiffs will seek leave of Court to amend this complaint to conform to proof of such damages at trial.

18. As a further direct, foreseeable and proximate result of the taking of their property without just compensation, Plaintiffs have been required to and have retained the services of counsel to prosecute this action. Plaintiffs have incurred, and will incur, attorneys' fees, appraiser and expert witness fees, and costs and expenses of litigation in an amount as yet unascertained. Plaintiffs will seek leave of this Court to amend this complaint to conform to proof of such damages at trial.

**PRAYER FOR RELIEF**

WHEREFORE, each Plaintiff prays for relief as follows:

1. A money judgment equal to the just compensation owing to each Plaintiff for the permanent taking of its property for public use, together with interest thereon at the legal rate from the date of taking;

2. Reasonable attorneys' fees for the bringing of this action;

3. The expenses of appraisers and other experts reasonably required to prosecute this action, together with other costs of this suit; and

4. Such other and further relief as the Court may deem just.

s/ Roger J. Marzulla
Roger J. Marzulla
Nancie G. Marzulla
MARZULLA & MARZULLA
1350 Connecticut Ave., N.W.
Suite 410
Washington, DC 20036
(202) 822-6760
(202) 822-6774 (facsimile)

Counsel for Plaintiffs

Dated: December 21, 2006

# Exhibit A


905
US Border Crossing
Siempre Viva
Airway Rd
Enrico Fermi
OTAY MESA ROAD
Secondary Border Fence
International Boundary
Primary Fence
Rancho Vista Del Mar Parcels
7
8
9
Parcel 6
Otay Mesa Property LP
Parcel 5
Rancho Vista Del Mar
Otay Mesa Property LP
Parcel 1
Otay International LLC
Parcel 4
Parcel 2
Parcel 3
Rancho Vista Del Mar