**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| **OTAY MESA PROPERTY L.P.,**<br>**RANCHO VISTA DEL MAR,**<br>**OTAY INTERNATIONAL LLC,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**UNITED STATES,**<br><br>**Defendant.** | **No. 06-167 L**<br><br>**Hon. Lawrence M. Baskir** |

**AMENDED ANSWER**

Defendant UNITED STATES hereby responds to the allegations in the numbered paragraphs of Plaintiffs' Complaint as follows:

(Unnumbered Paragraph) The first sentence of the unnumbered paragraph at the beginning of Plaintiffs' Amended Complaint is a characterization of Plaintiffs' claim to which no response is required. In response to the allegations of the second and third sentences, Defendant admits that employees of the Border Patrol, part of the Bureau of Customs

and Border Protection, Department of Homeland Security, have entered unto the properties which are the subject of the Amended Complaint (hereinafter, “Subject Property”) at different times in the course of its law enforcement activities; these entries have occurred since the Border Patrol was officially established in 1924. Since 1952, those entries have been made pursuant to the authority of 8 U.S.C. § 1357(a)(3); see also 5 C.F.R. § 287.1(c). As part of these law enforcement activities, Defendant admits that between late 1999 and 2004, the Border Patrol maintained a single tent/hut shelter on Parcel 4 of the Subject Property. In further response, Defendant denies that it has intentionally channeled aliens onto the Subject Property, denies that it has chased Plaintiffs off their own land, and denies that it uses the Subject Property as a training facility.

1. The United States lacks sufficient information to admit or deny the allegations contained in this paragraph and, therefore, denies the allegations.

2. The United States lacks sufficient information to admit or deny the allegations contained in this paragraph and, therefore, denies the allegations.

3. The United States lacks sufficient information to admit or deny

the allegations contained in this paragraph and, therefore, denies the allegations.

4. In response to the allegations of Paragraph 4, Defendant admits that it is the United States. Additional allegations in this paragraph are conclusions of law to which no response is required.

**Jurisdiction**

5. The allegations of Paragraph 5 are conclusions of law to which no response is required. In further response, Defendant admits that 28 U.S.C. § 1491 is the principal statute conferring jurisdiction on the United States Court of Federal Claims to hear Fifth Amendment takings claims.

**Operative Facts**

6. In response to the allegations in the first sentence of Paragraph 6, Defendant denies that all the parcels owned by the referenced three Plaintiffs are contiguous. With respect to the remaining allegations, Defendant lacks sufficient knowledge or information to form a belief as to the truth or falsity of the allegations.

7. In response to the allegations of the first sentence of Paragraph 7, Defendant avers that in 1990 it began construction of a fence along the international border between the United States and Mexico in the vicinity of

San Diego, California (hereinafter, "Primary Fence"). In further response to the allegations of the first sentence, Defendant avers that the Primary Fence terminates at a point approximately 900 feet to the west of the eastern-most boundary of Parcel 3 and was completed to that location in March 1993. In response to the allegations of the second sentence, Defendant admits that the Primary Fence begins at the Pacific Ocean. In response to the allegations of the third sentence, Defendant avers that the Primary Fence is made of steel landing mats, each approximately 10-12 feet tall. In further response to the allegations of the third sentence, Defendant avers that the Primary Fence does not include "stadium lighting" or "infrared surveillance cameras;" but notes that lighting and cameras were installed as part of the construction of the Border Infrastructure System ("BIS") which included construction of the Secondary Fence, construction of lights and cameras on separate poles, and construction of roads (see details, Paragraph 8, infra). Accordingly, the permanent lights and cameras were and are placed only on property owned by the United States. In response to the allegations of the fourth sentence, Defendant avers that the number of illegal immigrants apprehended in San Diego County decreased from 531,889 in Fiscal Year 1993, to 138,608 in Fiscal

Year 2004.

8. In response to the allegations of the first sentence of Paragraph 8, Defendant admits that in late 2001, the main sections of the Secondary Fence, constructed as part of the Border Infrastructure System ("BIS"), were completed from the Otay Mesa Port of Entry eastward for 1.5 miles; however, that 1.5 miles of fence was not continuous as it contained gaps where gates were to later be installed. In further response to the allegations of the first sentence, Defendant admits that an additional .25 miles of fence was constructed in an easterly direction from the previous ending point in late 2005. In response to the allegations of the second sentence, Defendant admits that the Secondary Fence is made of steel mesh and avers that it begins at a point approximately 3 1/2 miles from the Pacific Ocean and travels eastward, generally parallel to the Primary Fence, with the distances between the two fences currently varying between 70 feet to as much as 380 feet; and that the Secondary Fence currently ends at a point approximately 300 feet to the east of the westernmost boundary of Parcel 1. In response to the third sentence, Defendant avers that an additional approximately one mile of the Secondary Fence remains to be constructed, at which point the Secondary

Fence will end at a point approximately 774 feet to the west of the easternmost boundary of Parcel 3. Defendant further avers that because of the extreme mountainous terrain at this eastern-most point, neither the Primary nor the Secondary Fences are currently planned to extend all the way to the easternmost boundary of Parcel 3.

9. In response to the allegations of the first sentence of Paragraph 9, Defendant admits that construction of the border fences has assisted in reducing illegal border crossings in the areas where construction has occurred; however, it has not totally eliminated illegal border crossings in those areas. While the Primary Fence was effective in eliminating drive-through alien and drug smuggling, aliens on foot simply climb over it, and then climb over or cut through either or both of the fences; aliens also tunnel under the fences. In further response, Defendant denies that the direct, foreseeable and intended effect of the border fences was to channel illegal immigrants onto the Subject Property; and Defendant avers that construction of the border fences in the San Diego area has caused an increase in illegal border crossings in the vicinity of El Centro (approximately 100 miles to the east of the Subject Property), at Yuma AZ, and along the international border with Arizona. In further response,

Defendant avers that the number of apprehensions in the vicinity of the Subject Property has decreased historically (1992 to present).

Finally, Defendant further avers that the location of the Secondary Fence is not correctly depicted on Exhibit A, the map attached to the Amended Complaint.

10. In response to the allegations of the first sentence of Paragraph 10, Defendant denies that the border fences were designed to channel illegal immigrants onto the Subject Property; and avers that the purpose of the Secondary Fence was to deter illegal crossings in the areas where they are most common. See P.L. 104-208, Section 102. In further response to the first sentence, Defendant avers that the construction of the border fences in the San Diego area has caused an increase in apprehensions in the vicinity of El Centro (approximately 100 miles from the Subject Property), Yuma AZ, and along the international border with Arizona.

In response to the allegations of the second sentence, Defendant admits that the Primary Fence in the San Diego area ends at a point approximately 900 feet to the west of the eastern-most boundary of Parcel 3 and was completed to that location in March 1993. In further response to the allegations of the second sentence, Defendant admits that the current

ending point of the Secondary Fence is at a location approximately 300 feet to the east of the western-most boundary of Parcel 1 of the Subject Property. In further response to the second sentence, Defendant admits that the apprehension of aliens on the Subject Property is not an unusual event today and has occurred since the creation of the Border Patrol in 1924.

In response to the allegations of the third sentence, Defendant admits that Border Patrol vehicles drive at a speed appropriate to their law enforcement duties; and that vans are utilized to remove apprehended aliens from the Subject Property when the number of apprehensions make such necessary.

In response to the fourth sentence, Defendant admits that on one occasion, Border Patrol agents constructed a tent/hut at a location known as 644 Trap which is located on Parcel 4 of the Subject Property; the tent/hut was designed to shelter Border Patrol agents from the elements and was casually constructed of poles, tarps, surplus wood, and landing mats. In further response, Defendant avers that the shelter was constructed in late 1999 or early 2000, and was dissembled and removed in April 2004. In further response to the allegations of the fourth sentence,

Defendant admits that since 1994 it has utilized portable floodlights at various temporary locations on the Subject Property in the vicinity of the border fences for the purpose of deterrence and to assist in the visibility of Border Patrol operations; the lights are positioned to illuminate in a south, southeast and southwest direction.

11. The allegations of the first three sentences of Paragraph 11 are denied. In further response, Defendant avers that on July 6, 2006, David Wick was observed driving a vehicle of a type commonly utilized by alien and drug smugglers, which vehicle had no license plates and was proceeding at a high rate of speed on a Border Patrol road located just north of the Secondary Fence. This road is part of the BIS and is located entirely on property owned by the United States. The vehicle driven by Mr. Wick was stopped by a Border Patrol agent, at which point Mr. Wick asserted that he owned the property and that he could go wherever he wanted. The agent explained to Mr. Wick that the road he was driving on was a government road, but Mr. Wick again asserted that it was his property.

The allegations of the fourth sentence are denied. In further response to the fourth sentence, Defendant avers that the training exercise

to which Plaintiffs are referring did not occur on the Subject Property and that no tents were pitched by the Border Patrol.

In response to the allegations of the fifth sentence, Defendant denies that the invasiveness of the Border Patrol activities on the Subject Property has increased in recent times. In further response, Defendant lacks sufficient knowledge or information to form a belief as to the truth or falsity of the allegation that tenants are "afraid" to lease Plaintiffs' land. 12.

The allegations of Paragraph 12 are conclusions of law to which no response is required; to the extent matters of fact are alleged, they are denied.

13. In response to the allegations of Paragraph 13, Defendant admits that just compensation has not been paid to Plaintiffs for the taking alleged in the complaint. In further response, Defendant avers that Plaintiffs or related business entities were paid just compensation as part of the direct condemnation of the land underlying the portion of the BIS that was constructed adjacent to Plaintiffs' Parcel 1. In addition, Plaintiffs or related business entities will be paid just compensation for the future proposed condemnation of additional property on which the BIS will be located adjacent to Plaintiffs' Parcel 3.

14. The allegations of Paragraph 14 are a characterization of Plaintiffs' claims to which no response is required.

**Claim for Relief**
**Just Compensation for Property Taken**

15. The allegations of Paragraph 15 are conclusions of law to which no response is required.

16. In response to the allegations of Paragraph 16, Defendant admits that just compensation has not been paid to Plaintiffs for the taking alleged in the complaint. In further response, Defendant avers that Plaintiffs or related business entities were paid just compensation as part of the direct condemnation of the land underlying the portion of the BIS that was constructed adjacent to Plaintiffs' Parcel 1. In addition, Plaintiffs or related business entities will be paid just compensation for the future proposed condemnation of additional property on which the BIS will be located adjacent to Plaintiffs' Parcel 3.

In further response to the allegations of Paragraph 13, Defendant denies that Plaintiffs' property has been taken for public use.

17. The allegations of Paragraph 17 are conclusions of law to which no response is required; to the extent matters of fact are alleged, they are denied, and Defendant specifically denies that Plaintiffs have been

damaged or are entitled to just compensation for the taking alleged in the complaint. The balance of Paragraph 17 is a characterization of Plaintiffs' complaint to which no response is required.

19. The allegations of Paragraph 19 are conclusions of law to which no response is required; to the extent matters of fact are alleged, Defendant lacks sufficient knowledge or information to form a belief as to the truth or falsity of the allegations.

## GENERAL DENIAL

The United States denies any and all allegations of the Amended Complaint, whether express or implied, that are not specifically admitted, denied or qualified herein.

## AFFIRMATIVE DEFENSES

1. Plaintiffs assert claims that are barred, in whole or in part, by the Statute of Limitations. 28 U.S.C. § 2501.

2. Plaintiffs assert claims that are barred, in whole or in part, by the doctrines of laches and equitable estoppel.

3. Plaintiffs fail to state a claim upon which relief can be granted.

WHEREFORE, the United States denies that Plaintiffs are entitled to the relief prayed for, or to any relief whatsoever, and requests that this

action be dismissed with prejudice, that judgment be entered for the United States and that the Court award to the United States all costs and such other and further relief as the Court may allow.

Dated: January 12, 2007. Respectfully submitted,

SUE ELLEN WOOLDRIDGE
Assistant Attorney General
Environment and Natural Resources Division

/s/ Susan V. Cook
_______________________________
SUSAN V. COOK
Senior Trial Attorney
E. KENNETH STEGEBY
Trial Attorney
Natural Resources Section
Environment & Natural Resources Division
United States Department of Justice
P.O. Box 663
Washington, DC 20044-0663
(202) 305-0470
(202) 305-0506 (Fax)
Email: susan.cook@usdoj.gov

OF COUNSEL:
A. Ted Kundrat
Melissa Erny
U.S. Customs and Border Protection
Department of Homeland Security
Indianapolis, Indiana 46278

370146.1