# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| **OTAY MESA PROPERTY L.P., et al.,** | ) | **No. 06-167 L** |
| **Plaintiffs,** | ) | **Hon. Lawrence M. Baskir** |
| **v.** | ) | |
| **UNITED STATES,** | ) | |
| **Defendant.** | ) | |

## JOINT STATUS REPORT

Pursuant to the Court's Orders filed on August 21, 2007, and September 21, 2007, the parties hereby file this Joint Status Report outlining the summary judgment issues and providing the Court with three dates for a telephonic status conference.

**DEFENDANT'S OUTLINE OF ISSUES**

Pursuant to this Court's order of August 21, 2007, Defendant herein provides the following outline of summary judgment issues:[1/]

1/ This outline covers in broad terms the issues Defendant intends to raise in its motion to dismiss or in the alternative for summary judgment. Because it is in outline format, as required by the Court's order, it cannot and does not identify every argument and sub-argument that may be presented in the United States' memorandum. It does, however, fairly represent in broad, outline terms the main arguments that Defendant intends to present.

# INTRODUCTION

## I. PLAINTIFFS' PHYSICAL TAKINGS CLAIM IS BARRED BY THE APPLICABLE SIX-YEAR STATUTE OF LIMITATIONS

A. Defendant, the United States of America, hereby respectfully moves the Court to dismiss Plaintiffs' Complaint for lack of jurisdiction pursuant to Rules 12(b)(1) and 12(h)(3) of the Rules of the United States Court of Federal Claims ("RCFC" or "Rule").[1/]

B. Plaintiffs' Complaint is subject to a six-year statute of limitations. See 28 U.S.C. § 2501.

1. Because the activities on which Plaintiffs' Complaint is based have been ongoing for more than six years prior to the filing of this case, the Complaint is not timely.

2. Accordingly, the Court does not have the requisite jurisdiction over this action and should dismiss the same with prejudice.

## II. PLAINTIFFS' AMENDED COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

A. Defendant moves to dismiss Plaintiffs' Complaint pursuant to Rule 12(b)(6) on the basis that Plaintiffs have failed to state a claim upon which relief may be granted.

B. Turning to the merits of Plaintiffs' Complaint, the complained-of activities do not form a basis upon which Plaintiffs can state a legally-cognizable claim of governmental taking under the Fifth Amendment.

1. First, Plaintiff Otay Mesa Property L.P. and Plaintiff Otay International LLC are barred from recovering just

---

[1/] / Defendant believes a motion to dismiss on statute of limitations grounds is properly brought pursuant to Rule 12(b)(1). However, to the extent the Court believes such a motion should be set forth under Rule 12(b)(6), Defendant asks that the Court consider this motion as one raised under that Rule.

compensation prior to 2002 and 2003, respectively, because they did not acquire an ownership in their properties (Parcels 1 and 4, respectively) until that time. Parcel 6 must be dismissed because it is owned by OMC Properties LLC, an entity that is not a named Plaintiff in this action.

2. Second, Plaintiffs do not have a property right protected by the Fifth Amendment to exclude Border Patrol agents who need to enter upon Plaintiffs' properties in the course of their law enforcement duties.

3. Third, the nature of the physical intrusions at issue here do not rise to the level of a taking.

**III. IN THE ALTERNATIVE, DEFENDANT MOVES FOR SUMMARY JUDGMENT IN ITS FAVOR**

## PROCEDURAL BACKGROUND

**I. PLAINTIFFS' COMPLAINT**

A. Plaintiffs filed their Complaint for Just Compensation in this action on March 3, 2006, alleging a physical taking of their properties as a result of the construction of a border fence between the United States and Mexico.

B. On November 1, 2006, the claims of Plaintiffs Rancho Vista and Otay International were severed from Plaintiff Otay Mesa Property, assigned a separate docket number, and consolidated under Otay Mesa Property, L.P. v. United States, No. 06-167.

C. Plaintiffs filed an Amended Complaint for Just Compensation on December 21, 2006.

**II. PLAINTIFFS' ALLEGATIONS**

A. In their amended complaint, Plaintiffs allege a "physical taking of approximately 1,050 acres of prime development land

located in eastern San Diego County, California, near the border with Mexico." Am. Comp. p. 1.

B. Plaintiffs claim that the Border Patrol "has physically entered onto Plaintiffs' land continuously for several years." Id.

C. Plaintiffs claim that the Border Patrol "has intentionally channeled illegal immigrants onto Plaintiffs' land for roundup and arrest." Id. at pp. 1-2. Plaintiffs further complain that, since the secondary fence has not been completed and currently terminates at the western edge of Plaintiffs' properties, the "roundup and arrest of illegal aliens takes place on Plaintiffs' properties almost daily." Id. at p. 6, ¶ 10.

D. Plaintiffs allege that the Border Patrol constructed a permanent shelter for its agents on their property. Id. at pp. 1-2.

E. Plaintiffs allege that the Border Patrol has chased Plaintiffs off of their own land. Id.

F. Plaintiffs allege that the Border Patrol "has been using Plaintiffs' property as a training facility to train itself." Id.

G. Plaintiffs allege that the Border Patrol has erected "numerous portable generated floodlights" on their properties. Id. at p. 6, ¶ 10.

H. Plaintiffs allege that these activities escalated in 2001, and that "[r]ecently, Defendant has enlarged its activities to encompass even more of Plaintiffs' land." Id. at p. 6, ¶ 11.

I. Plaintiffs seek an unspecified amount of just compensation, prejudgment interest, attorneys' fees and costs. Id. at pp. 7-8, ¶¶ 12-18.

## FACTUAL BACKGROUND

The United States Border Patrol (USBP), part of the Department of Homeland Security (DHS), Customs and Border Protection, is the lead

federal agency charged with securing the international border between the United States and Mexico. Border Patrol operations are divided into sectors. Relevant here is the San Diego Sector which is located north of Tijuana and Tecate, Mexican cities with a combined population of two million and a terrain that features no natural barriers to entry by unauthorized immigrants, smugglers or terrorists.

At issue in this litigation are nine parcels of land allegedly owned by Plaintiffs[2/] and located either adjacent to (Parcels 1, 3), or in the vicinity of (balance of parcels), the international border in eastern San Diego County, California. See Exhibit A (Map of Parcels), attached hereto. Plaintiffs' length of ownership of the parcels varies; some have been owned since 1982, others acquired as recently as 2002 and 2003.

## STANDARDS OF REVIEW

### I. RULE 12(b)(1)

#### A. Plaintiffs' Bear the Burden to Establish Subject Matter Jurisdiction

1. Plaintiffs bear the burden of establishing subject matter jurisdiction by a preponderance of the evidence. Alder Terrace, Inc. v. United States, 161 F.3d 1372, 1377 (Fed. Cir. 1998) (citing McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936)).

---

2/ Parcel 6 is owned by an entity which is not a Plaintiff in this action.

2. "[C]onclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss." Bond v. United States, 47 Fed. Cl. 641, 647 (2000) (quoting Briscoe v. LaHue, 663 F.2d 713, 723 (7th Cir. 1981), aff'd, 460 U.S. 325 (1983)).

## B. Jurisdiction May Be Challenged At Any Time and the Complaint is Not Controlling

1. Subject matter jurisdiction may be challenged at any time by the parties or by the court *sua sponte*. Fanning, Phillips, Molnar v. West, 160 F.3d 717, 720 (Fed. Cir. 1998).

2. In ruling on a motion to dismiss for lack of subject matter jurisdiction, a court must accept as true the complaints' undisputed factual allegations and construe the facts in the light most favorable to the plaintiffs. Figuera v. United States, 57 Fed. Cl. 488, 492 (2003) (citing Sheuer v. Rhodes, 416 U.S. 232, 236 (1974)); Pixton v. B & B Plastics, Inc., 291 F.3d 1324, 1326 (Fed. Cir. 2002).

3. However, if a motion to dismiss challenges the truth of jurisdictional facts alleged in the complaints, the allegations in the complaints are not controlling, and the court may consider relevant evidence in order to resolve the factual dispute. Ferreiro v. United States, 350 F.3d 1318, 1324 (Fed. Cir. 2003) ("A trial court may weigh relevant evidence when it considers a motion to dismiss that challenges the truth of jurisdictional facts alleged in a complaint."); Cedars-Sinai Med. Ctr. v. Watkins, 11 F.3d 1573, 1584 (Fed. Cir. 1993); Reynolds v. Army & Air Force Exchange Serv., 846 F.2d 746, 747 (Fed. Cir. 1988).

4. Where, as here, the Court lacks jurisdiction over subject matter of the complaint, the correct remedy is dismissal of the action. "[U]nder [Court of Federal Claims] Rule 12(h)(3), this court is mandated to. . . dismiss the action '[w]henever it appears by suggestion of the parties or

otherwise that the court lacks jurisdiction of the subject matter. . . ." Truckee-Carson Irrigation Dist. v. United States, 14 Cl. Ct. 361, 368 (1988) (alteration in original).

## II. RULE 12(b)(6)

A. "The Court of Federal Claims may grant a motion to dismiss for failure to state a claim upon which relief may be granted where the plaintiff can prove no set of facts that would support its claim." N.Y. Life Ins. Co. v. United States, 190 F.3d 1372, 1377-78 (Fed. Cir. 1999); see also Kemp v. United States, 65 Fed.Cl. 818, 821 (2005) (citing Bagwell v. United States, 21 Cl. Ct. 722, 725 (1990)).

B. Dismissal is proper under Rule 12(b)(6) when "the facts as alleged in the complaint do not entitle the plaintiff to a legal remedy." Holland v. United States, 59 Fed. Cl. 735, 738 (2004) (citing N.Y. Life Ins. Co., 190 F.3d at 1377).

C. When reviewing a motion to dismiss under Rule 12(b)(6), the court "must accept as true all the factual allegations in the complaint, and [the court] must indulge all reasonable inferences in favor of the non-movant." Sommers Oil Co. v. United States, 241 F.3d 1375, 1378 (Fed. Cir. 2001) (citations omitted); see also Huntleigh USA Corp. v. United States, 63 Fed. Cl. 440, 443 (2005) ("When considering a motion to dismiss a claim under RCFC 12(b)(6), a court must accept as true all well-pled factual allegations and draw all reasonable inferences in plaintiff's favor.") (citations omitted).

## III. RULE 56

### A. Summary Judgment Is An Efficient Method To Resolve Litigation

1. Summary judgment is a "salutary method of disposition designed to secure the just, speedy and inexpensive determination of every action." Sweats Fashions, Inc. v. Pannill Knitting Co., 833 F.2d 1560, 1562 (Fed. Cir. 1987) (internal quotation marks omitted).

2. In this regard, the summary judgment procedure "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the 'just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

### B. Summary Judgment Is Appropriate When There Are No Genuine Issues of Material Fact

1. Summary judgment is appropriate under RCFC 56 when there are no genuine issues of material fact in dispute, and the moving party is entitled to a judgment as a matter of law. RCFC 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).

2. "Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude entry of summary judgment." Anderson, 477 U.S. at 248-49; see also Knieper v. United States, 38 Fed. Cl. 128, 134 (1997) ("Disputes over facts which are not outcome determinative under the governing law will not preclude the entry of summary judgment.").

## ARGUMENT

## I. PLAINTIFFS' PHYSICAL TAKINGS CLAIM IS BARRED BY THE APPLICABLE SIX-YEAR STATUTE OF LIMITATIONS

### A. Applicable Legal Framework

1. The statute of limitations applicable to Plaintiffs' physical takings claims is set forth in 28 U.S.C. § 2501 and provides: "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501.

2. Because this six-year statute of limitations "is a

jurisdictional requirement attached by Congress as a condition of the government's waiver of sovereign immunity . . . [it] must be strictly construed." Hopland Band of Pomo Indians v. United States, 855 F.2d 1573, 1576-77 (Fed. Cir. 1988); see also Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 374 (1978) ("[t]he limits upon federal jurisdiction, whether imposed by the Constitution or by Congress, must be neither disregarded nor evaded."); Simmons v. United States, 53 Fed. Cl. 131, 133 (2002) ("Because the limitations period is an express condition of the Government's consent to be sued, the court lacks the power to toll the running of the statute of limitations on equitable grounds"), aff'd, No. 02-5163, 2003 WL 23415938 (Fed. Cir. Jan. 10, 2003) (unpublished per curiam).

3. Plaintiffs' complaint was filed March 3, 2006. Plaintiffs' physical takings claim, however, accrued more than six years before the complaint was filed in this Court. Therefore, Plaintiffs physical takings claim is barred, and Plaintiffs' Complaint must be dismissed.

**B. Regardless of Whether the Secondary Fence Has Channeled Illegal Immigrants Onto Plaintiffs' Properties, the Border Patrol Presence on Plaintiffs' Properties Was Either the Same or Greater in the Past Than It Is Now**

1. The Border Patrol has patrolled Plaintiffs' properties since it began law enforcement activities after its formation in 1924.

a. Border Patrol agents have patrolled Plaintiffs' properties on a frequent basis since at least the early 1980s.

b. In 1994, there was a dramatic increase in manpower and other law enforcement resources in San Diego Sector as a result of "Operation Gateway." The number of Border Patrol agents assigned to the San Diego Sector continued to

increase through 1999, when it reached its all time peak. The number of agents assigned to San Diego Sector is lower today than in 1999.

2. The number of apprehensions in 1992 were 4 to 6 times greater than the number of apprehensions in 2006.

   a. For example, the Border Patrol's Brown Field Station, part of the San Diego Sector, reported 202,173 apprehensions in 1992 as compared to 48,959 in 2006.[3/]

   b. The Border Patrol's Chula Vista Station, also part of the San Diego Sector, reported 158,952 apprehensions in 1992 as compared to 26,202 in 2006.

3. Lighting and Other Temporary Structures Have Been Used on Plaintiffs' Properties Since 1998

   a. The Border Patrol began using portable lights on Plaintiffs' properties by no later than 1998, more than ten years prior to Plaintiffs filing their complaint in this Court.

   b. By no later than early 2000, more than six years prior to the filing of the complaint in this matter, the Border Patrol constructed a temporary shelter from the weather on Parcel 4 at a location known as 644 Trap. The shelter was casually constructed of poles, tarps, surplus wood, and steel landing mats. In April 2004, the hut was dissembled and removed because the patrol unit which had constructed the shelter was transferred to another area.

---

[3/] It is only recently that the practice of entering latitude and longitude coordinates into the apprehension records was begun. Accordingly, the exact number of apprehensions occurring on each of the parcels at issue here is not known for apprehension events prior to FY2003.

**C. The Presence of Sensors on Properties Adjacent to the Border is Both Longstanding and Common Knowledge**

1. Some sensors have been deployed permanently on Plaintiffs' properties since at least 1980.

2. Other sensors have been deployed on Plaintiffs' properties on a temporary basis and are moved around as illegal entry traffic patterns change.

3. Plaintiffs' efforts to make their claim appear timely by trespassing on U.S. property to deliberately engage the Border Patrol, should be rejected.

**II. ONLY THE LEGAL OWNER OF THE PROPERTY AT THE TIME OF THE ALLEGED TAKING CAN RECOVER JUST COMPENSATION AND ONLY FOR THE PERIOD OF OWNERSHIP**

**A.** Every plaintiff in a takings case must establish, as a threshold matter, that he owned a compensable property interest on the alleged date of taking. United States v. Dow, 357 U.S. 17, 20 (1958) (". . . it is undisputed that '[since] compensation is due at the time of the taking, the owner at that time, not the owner at an earlier or later date, receives the payment.'"

**B. Plaintiff Otay Mesa Property L.P. and Plaintiff Otay International LLC Are Barred From Recovering Just Compensation Prior to 2002 and 2003, Respectively**

1. Named Plaintiff Otay Mesa Property L.P. did not acquire its interest in Parcel 1 until April 26, 2002, and therefore cannot recover for any taking prior to that date.

2. Named Plaintiff Otay International LLC did not acquire its interest in Parcel 4 until December 2003, and therefore cannot recover for any taking prior to that date.

**C. Plaintiffs' Claim As To Parcel 6 Must Be Dismissed**

1. Legal title to Parcel 6 is vested in OMC Properties LLC

which is not a named Plaintiff in this action. Therefore, Plaintiffs' claim as to Parcel 6 must be dismissed.

2. Legal title to Parcel 6 is further impaired by the existence of an outstanding lease to Calpine Corporation. There can be no recovery in this litigation for impairment to that lease inasmuch as Calpine Corporation is not a named Plaintiff.

## III. PLAINTIFFS DO NOT POSSESS A COGNIZABLE PROPERTY RIGHT TO EXCLUDE BORDER PATROL AGENTS ENGAGED IN LAW ENFORCEMENT DUTIES FROM THEIR PROPERTIES

### A. Plaintiffs Bear the Burden to Establish a Property Right Protected By the Fifth Amendment

It is well established that the plaintiff bears the burden of proving that he possesses a legally-cognizable property interest. Skip Kirchdorfer, Inc. v. United States, 6 F.3d 1573, 1580 (Fed. Cir. 1993). The question of whether a plaintiff has such a property interest presents "a question of law based on factual underpinnings." Walcek v. United States, 303 F.3d 1349, 1354 (Fed. Cir. 2002) (citing Wyatt v. United States, 271 F.3d 1090, 1096 (Fed. Cir. 2001), cert. denied, 535 U.S. 1077 (2002)).

### B. The Question of Whether a Cognizable Property Right Exists is a Threshold Inquiry

In determining whether the government's actions here constituted an unconstitutional taking, the threshold inquiry must be whether the plaintiff has a protected property right, the deprivation of which entitles him to compensation under the Fifth Amendment. Chancellor Manor v. United States, 331 F.3d 891, 901 (Fed. Cir. 2003).

### C. The Question of Whether the Alleged Property Right is Recognized as Compensable is Determined With Reference to Existing Rules and Understandings

1. The "compensability" of a property interest is determined by the property owner's ability to show that the interest was "sufficiently bound up with the reasonable

expectations of the claimant to constitute 'property' for the Fifth Amendment purposes." Penn Central Transportation Co. v. New York City, 438 U.S. 104, 124-125 (1978).

2. In evaluating the nature of a plaintiff's property interest, a court must look to "existing rules or understandings," Board of Regents v. Roth, 408 U.S. 564, 577 (1972), referred to more recently as "background principles," Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 1029 (1992), in evaluating whether the particular property interest that a plaintiff claims was taken is one which the law recognizes as being compensable.

**D. The Border Patrol Has A Statutory Right to Enter Plaintiffs' Properties to Prevent Illegal Immigration**

1. Specifically, Section 287 of the Immigration and Nationality Act gives the Border Patrol the right ". . . within a distance of twenty-five miles from any such external boundary [of the United States] to have access to private lands, but not dwellings," without a warrant, "for the purpose of patrolling the border to prevent the illegal entry of aliens into the United States. . . ." 8 U.S.C.A § 1357(a)(3).

2. Patrolling the border is defined as "conducting such activities as are customary, or reasonable and necessary, to prevent the illegal entry of aliens into the United States." 8 C.F.R. § 287.1(c)

**E. Plaintiffs' Property Titles Are Limited by, and Subject to, the Power of Law Enforcement to Enter Onto the Property for Law Enforcement Purposes; The Exercise of this "Police Power" Is Not Viewed as Giving Rise to a Right to Compensation Under the Fifth Amendment**

1. Plaintiffs cannot meet their threshold burden of showing that they possess a compensable property interest to exclude the entry of Border Patrol agents in the course of their law enforcement duties.

2. All citizens hold their property subject to the right of law enforcement to enter upon the property in the course of official duties.

3. The location and frequency of Border Patrol entry onto Plaintiffs' properties is determined by independent third parties pursuing criminal activities, is not within the control of the government, and therefore does not constitute government action for purposes of the Fifth Amendment.

4. The entries of the Border Patrol onto Plaintiffs' properties were not for the direct benefit of the government; but are instead an exercise of the government's police power which has long been recognized as being non-compensable. Acadia Technology, Inc. v. United States, 458 F.3d 1327, 1332 (Fed. Cir. 2006); Amerisource Corp. v. United States, 75 Fed. Cl. 743, 747 (2007).

## IV. EVEN IF PLAINTIFFS POSSESSED A COMPENSABLE PROPERTY RIGHT TO EXCLUDE THE BORDER PATROL FROM THEIR PROPERTY, THE NATURE OF THE PHYSICAL INTRUSIONS HERE ARE NOT SUFFICIENT TO RISE TO THE LEVEL OF A TAKING

A. The undisputable data shows that apprehensions on Plaintiffs' properties do not occur with the frequency alleged by Plaintiffs.

B. Particularly given the police power purpose of the Border Patrol entries, these sort of transitory entries onto private property to not rise to the level of a taking.

C. To the extent Plaintiffs' claims are not barred by the statute of limitations, the placement of sensors on Plaintiffs' properties is

a law enforcement necessity which protects Plaintiffs' properties, not burdens them.

D. To the extent Plaintiffs' claims are not barred by the statute of limitations, the construction of a shelter on Parcel 4 was a law enforcement necessity which protects Plaintiffs' properties, not burdens them.

**PLAINTIFFS' STATEMENT**

Plaintiffs do not intend to file a motion for summary judgment. Regarding the Government's proposed motion for summary judgment, Plaintiffs do not believe that the Court should allow the motion because it will be, at best, of questionable merit.[1/] To that end, Plaintiffs provide the following observations regarding the Government's outline.

1. The Border Patrol's presence upon Plaintiffs' land has increased dramatically as a result of the completion of the secondary fence in 2001. Contrary to the Government's contention, the fence channels far larger numbers of illegals onto Plaintiffs' property, requiring far larger numbers of Border Patrol agents and more sophisticated operations to interdict the illegals. The increasing number of illegals has resulted in constant interdictions and related activity throughout the year, round-the-clock patrols, plus permanent installations of shelters, ground vibration detectors

---

5/ Given that the Government has yet to file its formal motion, Plaintiffs will not attempt to provide a detailed response to the motion. Plaintiffs reserve the right to raise arguments in opposition to the Government's motion beyond those contained in this Joint Status Report.

and other equipment. These circumstances not only place Plaintiffs' cause of action well within the 6-year provisions of 28 U.S.C. § 2501, but present factual issues that are not appropriate for summary judgment.

2. Contrary to the Government's argument, Parcel 6 is properly included in this litigation. Corporate ownership by Plaintiffs of Parcel 6 has essentially been the same before and after the 2002-2003 time frame referenced by Defendant. Also, the Government's argument in this connection addresses a damages issue, not a liability issue, and is not appropriate for summary judgment.

3. Regarding Defendant's statutory argument based upon its interpretation of 8 U.S.C. § 1357(a)(3) and 8 C.F.R. § 287.1(c), the rights created by the statute are limited, and the statute does not purport to (and, indeed, could not) eliminate the constitutional right to just compensation established by the Fifth Amendment. Moreover, a physical entry pursuant to the police power does not, as the Government contends, defeat a Fifth Amendment taking claim. *See Hendler v. United States,* 952 F.2d 1364 (Fed. Cir. 1991) (finding that EPA's actions under CERCLA in placing groundwater wells on private property, as part of its efforts to combat groundwater pollution, effected a taking); *see also, Acadia Technology, Inc. v. United States*, 458 F.3d 1327 (Fed. Cir. 2006) ("it is insufficient to avoid

the burdens imposed by the Takings Clause simply to invoke the ‘police powers’ of the state, regardless of the respective benefits to the public and burdens on the property owner”).

4. Defendants have occupied Plaintiffs’ property by constructing a permanent shelter, by burying underground sensors, and by the placement of spotlight towers. In addition, Defendants have subjected Plaintiffs’ property to constant occupation through patrols by Border Patrol personnel using ATV’s, SUV’s, and horses. Indeed, Border Patrol agents have testified in deposition that they treat Plaintiffs’ property as though it were Government property. These facts are more than sufficient to establish a compensable taking.

**JOINT STATEMENT**

The parties have consulted and propose the following three dates for a telephonic status conference to discuss the summary judgment issues: October 15, 2007, October 22, 2007, and October 24, 2007.

Counsel for Defendant has conferred with counsel for Plaintiffs, who has authorized Defendant to submit this document on behalf of both parties.

Dated: September 25, 2007.

Respectfully submitted,

RONALD J. TENPAS
Acting Assistant Attorney General
Environmental & Natural Resources
Division

s/ Susan V. Cook
SUSAN V. COOK, Senior Attorney
KELLE S. ACOCK, Trial Attorney
Natural Resources Section
United States Department of Justice
P.O. Box 663
Washington, D.C. 20044
Tele (202) 305-0470
Fax (202) 305-0506
susan.cook@usdoj.gov

Attorneys for Defendant

414447.1