# In the United States Court of Federal Claims

No. 06-167L (and consolidated cases)

(Filed: November 6, 2015)

```
**************************************
                                     *
OTAY MESA PROPERTY, L.P., et al.,    *
                                     *
                Plaintiffs,          *
                                     *
v.                                   *
                                     *
THE UNITED STATES,                   *
                                     *
                Defendant.           *
                                     *
**************************************
```

Fifth Amendment Taking; U.S. Border Patrol's Use of Seismic Intrusion Sensors on Plaintiffs' Property; Attorneys' Fees and Expenses; 42 U.S.C. § 4654.

*Roger J. Marzulla*, with whom was *Nancie G. Marzulla*, Marzulla Law, LLC, Washington, D.C., for Plaintiffs.

*Davené D. Walker*, with whom was *John C. Cruden*, Assistant Attorney General, United States Department of Justice, Environment and Natural Resources Division, Washington, D.C., for Defendant.

OPINION AND ORDER REGARDING
AWARD OF ATTORNEYS' FEES AND EXPENSES

WHEELER, Judge.

On June 5, 2015, Plaintiffs Otay Mesa Property, LP, Rancho Vista Del Mar, Otay International, LLC, OMC Property, LLC, D&D Landholdings, LP, and International Industrial Park, Inc. (collectively, "Otay Mesa") filed a motion for recovery of attorneys' fees and costs under the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 ("URA"). 42 U.S.C. § 4654(c). Pursuant to the URA, this Court must award a plaintiff who recovers compensation for the taking of property by a federal agency "such sum as will in the opinion of the court . . . reimburse such plaintiff for his reasonable costs, disbursements, and expenses, including reasonable attorney . . . fees." Id. In this case, Plaintiffs brought a successful claim against the Government for its permanent

physical taking of an easement over their property in Southern California. On June 10, 2015, this Court entered a final judgment of $802,501.23 in Plaintiffs' favor.

Otay Mesa requests attorneys' fees in the amount of $1,705,631.59 and expenses in the amount of $397,943.01, plus costs of $85,242.82 to be considered separately by the Clerk of Court. The attorneys' fees are based on 5,725.50 hours billed by two firms. The total attorneys' fee amount includes a ten percent contingency fee of $80,472.84. Otay Mesa's requested expenses range from early 2006 through September 30, 2015.

The Government objects to Otay Mesa's requests on multiple grounds and proposes a total award of $965,947.68, including costs. Along with arguing for a six-stage downward percentage adjustment in the number of hours billed, the Government raises no fewer than thirteen separate arguments in its opposition to Otay Mesa's motion. Although many of the Government's objections are unwarranted, the Court finds it appropriate to apply a percentage reduction to the number hours billed and expenses incurred during the first phase of litigation. For the reasons set forth below, Otay Mesa is entitled to recover $1,172,050.34 for attorneys' fees and $276,134.75 for expenses incurred in this litigation. The Clerk of Court will consider Otay Mesa's Bill of Costs separately.

### Background

Otay Mesa's motion for attorneys' fees comes before the Court after three trials, two appeals to the Federal Circuit, a stipulation to liability by the Government, and a final judgment awarding Otay Mesa $802,501.23. A detailed factual background and history of this case can be found in the Court's previous opinions. See Otay Mesa Prop., L.P. v. United States, 779 F.3d 1315, 1327 (Fed. Cir. 2015) ("Otay Mesa II"); Otay Mesa Prop., L.P. v. United States, 110 Fed. Cl. 732, 747 (2013) ("Damages and Interest Decision"); Otay Mesa Prop., L.P. v. United States, 670 F.3d 1358, 1360 (Fed. Cir. 2012) ("Otay Mesa I"); Otay Mesa Prop., L.P. v. United States, 93 Fed. Cl. 476, 479-84 (2010) ("Damages Decision"); Otay Mesa Prop., L.P. v. United States, 86 Fed. Cl. 774, 775-85 (2009) ("Liability Decision"). The Court will provide a brief overview of the factual and procedural history that led to Otay Mesa's current motion for attorneys' fees.

Plaintiffs are businesses owned and operated by various members and associates of the De La Fuente family. Collectively, Plaintiffs own eleven adjoining parcels of land near the Mexican border in the Otay Mesa area of San Diego County, California. Otay Mesa I, 670 F.3d at 1360. In 1992, Rancho Vista Del Mar granted the United States Border Patrol a twenty-foot-wide easement along the border with Mexico to enable the Border Patrol to conduct surveillance and respond to illegal alien activity in the area. Liability Decision, 86 Fed. Cl. at 775. The easement allowed the Border Patrol to conduct law enforcement on foot, by vehicle, or on horseback. However, in 2006, Plaintiffs filed suit in this Court alleging that the Border Patrol had increased its operations beyond the scope of the easement in the aftermath of the September 11, 2001 terrorist attacks. Id. at 776.

On March 3, 2006, Plaintiffs Otay Mesa Property, Rancho Vista Del Mar, and Otay Mesa International filed a complaint with this Court to recover just compensation for the Government's alleged taking.  Judge Lawrence Baskir was assigned the case, and subsequently denied Plaintiffs' unopposed motion to amend their pleadings to add Plaintiffs International Industrial Park ("IIP") and D&D Landholdings ("D&D") to the action.  Id.  Thereafter, Plaintiffs IIP and D&D each filed separate complaints with this Court, and the cases were assigned to Judges Thomas Wheeler and Margaret Sweeney respectively.  After additional filings, the cases before Judges Baskir and Sweeney were eventually transferred to Judge Wheeler and consolidated.  In the meantime, Judge Baskir had bifurcated the case before him into a liability phase and a damages phase and so the parties continued to move forward with discovery on liability after consolidation.  Pls.' Motion at 4.

Shortly before the liability trial and after extensive fact and expert discovery, the Government stipulated to partial liability for the physical taking of an easement due to its placement of seismic sensors on five of Plaintiffs' eleven parcels.  Liability Decision, 86 Fed. Cl. at 775.  Consequently, even though Plaintiffs' claims were barred by the six-year statute of limitations set forth in 28 U.S.C. § 2501, based on the Government's concession, this Court determined that the Government "was liable for the physical taking of an easement over the five parcels" and awarded Otay Mesa $3,043,051 plus interest in compensation.  Damages and Interest Decision, 110 Fed. Cl. at 734 (citing Liability Decision, 86 Fed. Cl. at 790).  The parties cross-appealed this Court's decision.  On appeal, the Federal Circuit held "that the Border Patrol's blanket easement to install, maintain, and service sensors on Otay Mesa's property constituted a permanent physical taking," and remanded the case to this Court to reconsider damages.  Otay Mesa I, 670 F.3d at 1365.

In December 2012, this Court conducted a remand trial on damages to identify a valuation method that would "fulfill[] the goal of awarding Otay Mesa just compensation" for the Government's "minimally invasive permanent easement to use undeveloped land that is unilaterally terminable by Otay Mesa." Id. at 1368-69.  On remand, this Court held that Otay Mesa was not entitled to damages for the Government's taking of an easement over land that could be developed for industrial use, but was entitled to damages for land that could be used for environmental mitigation purposes.  Damages and Interest Decision, 110 Fed. Cl. at 734.  Specifically, the Court determined that the Border Patrol's easement required Plaintiffs to involuntarily assume the small risk that California authorities may decide the environmentally sensitive land was no longer suitable for mitigation.  Id.  The Court held that "[a] fair and reasonable outcome is to award the Plaintiffs five percent reduction in the value of their mitigation land because of the potential denial of a mitigation request." Id.  An expert for Plaintiffs testified that the mitigation land carried a fair market value of $9,110,400.  Id.  Accordingly, the Court awarded Plaintiffs $455,520 in damages for the Government's taking, with interest calculated from the date the Government stipulated to liability, August 28, 2008.  Id.

Once again, the parties appealed to the Federal Circuit. On appeal, the Federal Circuit affirmed this Court's decision to deny damages for the easement over the development property and award $455,520 in damages for the easement over the mitigation property. Otay Mesa II, 779 F.3d at 1317-18. Regarding the interest calculation, the Federal Circuit vacated the decision to compute interest beginning on August 28, 2008, and held that Otay Mesa was entitled to interest from the date the Government first placed the sensors on the property. Id. at 1318.

On June 4, 2015, the parties stipulated to the amount of interest accrued through that date, totaling $346,981.23. Joint Stipulation, Dkt. No. 290. Accordingly, this Court directed the Clerk of Court to enter judgment for Plaintiffs in the amount of $802,501.23, representing the value of the taking plus interest. Order for Entry of Final Judgment, Dkt. No. 293. On June 5, 2015, Plaintiffs filed a motion to recover attorneys' fees and costs pursuant to the URA. The parties have fully briefed this motion, and on October 5, 2015, the Court heard closing argument.

Discussion

I.   Recovery Under the URA

Generally, our legal system adheres to the "American Rule," whereby each party to a lawsuit bears its own attorneys' fees regardless of the outcome. Hensley v. Eckerhart, 461 U.S. 424, 429 (1983). Nevertheless, Congress may authorize courts to award attorneys' fees to prevailing parties in specific instances. Section 4654(c) of the URA is one such instance. The Fifth Amendment of the United States Constitution prohibits the taking of private property for public use by the Government without "just compensation." U.S. Const. amend. V, § 4. Although the term "just compensation" includes only the value of the property taken, the URA provides for the recovery of costs associated with litigating Governmental-taking cases in certain circumstances. 42 U.S.C. § 4654(a), (c). Pursuant to the URA, a successful litigant in a Fifth Amendment takings case is entitled to recover "his reasonable costs, disbursements, and expenses, including reasonable attorney, appraisal, and engineering fees, actually incurred because of such a proceeding." 42 U.S.C. § 4654(c).

Courts frequently use the "lodestar" method to determine reasonable attorneys' fees pursuant to a fee-shifting statute. This method involves multiplying "the number of hours reasonably expended on the litigation . . . by a reasonable hourly rate." Hensley, 461 U.S. at 433. However, strict adherence to the lodestar method is not required. "Generally, in determining the amount of reasonable attorneys' fees to award under federal fee-shifting statutes, the district court is afforded considerable discretion." Bywaters v. United States, 670 F.3d 1221, 1228 (Fed. Cir. 2012) (citing Hensley, 461 U.S. at 437). When a plaintiff has achieved only "partial or limited success," the lodestar calculation may lead to an

excessive fee award.  Hensley, 461 U.S. at 434.  Along with other factors, a court may consider the degree of success obtained by the plaintiff and adjust the calculation accordingly.  Id.  To make such an adjustment, a court may reduce the number of hours "reasonably expended" on the litigation in its initial calculation of the lodestar figure, but it generally may not engage in a wholesale "reduc[tion of] the lodestar figure itself." Bywaters, 670 F.3d at 1232.

The party seeking the fees bears the burden of showing that the hourly rate is reasonable.  Rates are presumptively reasonable when they are in line with the prevailing market rate – the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984).  One way to determine whether a rate is reasonable in Washington, D.C., is to consult the Updated Laffey Matrix, a billing survey of District of Columbia market rates.  Bywaters, 670 F.3d at 1235 (citing Salazar v. District of Columbia, 123 F.Supp.2d 8, 15 (D.D.C. 2000) (explaining that "the Updated Laffey Matrix has been used by the United States District Court for the District of Columbia to determine the amount of a reasonable attorney fee on several occasions.")).

II.   Attorneys' Fees

a.   Reasonable Number of Hours

Plaintiffs seek reimbursement of attorneys' fees based on 5,603.90 hours of work by attorneys from Marzulla Law and 121.60 hours of work by Michael H. Fish, an appellate attorney who assisted with both appeals in this case.  The Government raises no fewer than ten objections to these hours and proposes various adjustments based on the type of work performed as well as a general percentage reduction to the overall number of hours billed. The Court will address the specific requested adjustments before turning to the general percentage reduction.

i.   Preliminary Report

Otay Mesa requests reimbursement for a $10,000 flat fee paid to Marzulla Law for a litigation strategy memorandum the firm prepared prior to filing the initial complaint in this case.  Pls.' Reply at 13.  Otay Mesa argues that the report was a "necessary initial step in preparing the litigation" because Marzulla Law investigated the applicable facts and law to this case to prepare the report.  Id.  The Government argues that Otay Mesa should not be reimbursed for this expense because the report covers topics not at issue in this litigation and contends that the $10,000 fee is better characterized as a "client development expense." Gov't Resp. at 9.  The Court agrees.  Given that a firm typically would not bill a client for time spent on client development, it would be inappropriate to shift such a fee to the Government.  See Hensley, 461 U.S. at 434 ("Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority."

(quoting <u>Copeland v. Marshall</u>, 641 F.2d 880, 891 (D.C. Cir. 1980) (en banc)) (emphasis in original)).

Pursuant to section 4654(c), expenses associated with filing a Fifth Amendment takings claim are reimbursable; expenses incurred prior and not directly related to the filing itself are not.  <u>See, e.g.</u>, <u>Preseault v. United States</u>, 52 Fed. Cl. 667, 671 (2002) ("Section 4654(c) does not provide for the reimbursement of expenses incurred by plaintiffs before their decision to file suit in the Court of Federal Claims."); <u>see</u> <u>also</u> <u>Emeny v. United States</u>, 208 Ct. Cl. 522, 527 (1975) (holding "that the plain language of 42 U.S.C. § 4654(c) precludes the court from including in its award to the plaintiffs any reimbursement for expenses incurred by the plaintiffs before they decided to file suit in the Court of Claims under 28 U.S.C. § 1491.").  Although the Court acknowledges that Marzulla Law may have used the factual and legal knowledge it gained by drafting the preliminary report in litigating Otay Mesa's takings claim, ultimately this fee was not incurred "because of such proceeding." 42 U.S.C. § 4654(c).  As such, it is not within this Court's purview to award compensation to Otay Mesa for the litigation strategy memorandum.  This memorandum may have been a "necessary" pre-litigation expense, but such expenses are simply not reimbursable under the URA.

## ii.  <u>Work by Outside Attorneys</u>

The Government contends that hours billed by Michael Fish, of Niddrie, Fish & Addams, LLP (formerly known as Niddrie, Fish & Buchanan, LLP) and Cynthia Eldred, Otay Mesa's zoning and land use expert who testified in the 2009 damages trial, were unnecessary and therefore are unreasonable.  Specifically, the Government argues that it should not reimburse Otay Mesa for Mr. Fish's work because "he merely consulted and/or reviewed work of Marzulla Law."  Gov't Resp. at 12.  As to Ms. Eldred's fees, the Government argues that the Court should reduce the total requested amount by fifty percent because Ms. Eldred spent "a number of hours consulting on the litigation with the Marzulla Law firm."  <u>Id.</u>

In response to the Government's arguments, Otay Mesa explains that it hired Mr. Fish as a specialized appellate attorney to assist with the two appeals in this case.  Pls.' Reply at 16.  With regard to Ms. Eldred, Otay Mesa argues that the Government incorrectly categorizes her expenses as attorneys' fees.  Pls.' Reply at 19.  Otay Mesa submitted Ms. Eldred's invoices to demonstrate that she consulted with Marzulla Law in her capacity as an expert on land use and zoning in preparation for trial and during post-trial briefing.  Pls.' Reply at 19-20; Ex. 9.

This Court has explained that "the costs of having one set of experienced, competent, and highly paid attorneys review the work of another set of experienced, competent and highly paid attorneys is not reasonable." <u>Preseault</u>, 52 Fed. Cl. at 680 (citing <u>Emeny</u>, 208 Ct. Cl. at 530).  The plaintiffs in <u>Preseault</u> had fourteen different attorneys

representing them throughout the case and sought fees and expenses for nine different legal organizations. Here, a single firm represented Otay Mesa throughout the nearly ten years of litigation in this case, with Roger Marzulla serving as counsel of record from the outset. In this context, Otay Mesa's requests for fees it incurred by hiring a specialized appellate attorney and an expert on land use and zoning are neither excessive nor redundant. Under these circumstances, the Court finds that the fees incurred for this specialized assistance are reasonable.

### iii.  Paralegal Work

The Government argues that approximately 19.9 of the hours billed by Marzulla Law are administrative in nature and therefore are non-compensable overhead costs. Generally, costs associated with administrative services "are more appropriately charged to overhead" and should therefore be included within an attorney's hourly rate. Hopi Tribe v. United States, 55 Fed. Cl. 81, 99 (2002) (quoting Batdorf v. Sec'y of Dep't of Health and Human Servs., 1990 WL 293394 *2 (Cl. Ct.)).

Contrary to the Government's argument, the explanations accompanying the disputed time entries describe the type of "required legal duties" for which this Court has awarded recovery. Information Sciences Corp. v. United States, 86 Fed. Cl. 269, 291 (2009) (awarding recovery for time spent "organizing case documents"). As the Court finds that it is reasonable to bill for this type of work at a paralegal rate, the 1.6 hours billed at an associate rate of $295 on March 31, 2015 for time spent "summariz[ing] billing information for petition on attorneys' fees and costs" shall instead be billed at the paralegal rate of $85. To account for this adjustment, the Court will deduct $336 before calculating the average hourly rate for the lodestar calculation.

### iv.  Duplicative Hours

The Government also seeks reductions to account for duplicative billing. Gov't Resp. at 10-11, Tab 6; Gov't Objections at 84. The Court agrees with Otay Mesa that most of these entries appear to reflect work related to one task, but billed in separate time entries over the course of one day, a best practice in billing at many firms. See Pls.' Reply at 15. However, four of these entries, accounting for 24 hours, are duplicative and therefore unreasonable.[1] The Court will therefore deduct these entries before calculating the lodestar figure.

---

[1] The 4 entries at issue are:  (1) Barbara A. Wally, September 18, 2006, 0.50 hours, $87.50; (2) Lucy J. Wiggins, November 12, 2009, 9.50 hours, $1,380; (3) Nancie G. Marzulla, March 26, 2010, 8 hours, $3,600; (4) Roger J. Marzulla, February 11, 2013, 6 hours, $2,700.

v.  Motion for Attorneys' Fees and Closing Costs

Generally, fees and expenses associated with filing and litigating attorneys' fees under section 4654(c) are themselves recoverable under the URA as costs incurred because of the inverse condemnation proceedings. Emeny, 208 Ct. Cl. at 532; see also Gregory v. United States, 110 Fed. Cl. 400, 406 (2013) (billing 10.3 hours for preparing motion for attorneys' fees and costs was reasonable and reimbursable). Here, Marzulla Law estimates that preparing and litigating Otay Mesa's motion for attorneys' fees and expenses will cost an additional $20,000. Pls.' Motion at 16. In response, the Government argues that "[t]he URA allows for collection of costs actually incurred, not those that *may* be incurred in the future," and alternatively, that $20,000 is an excessive amount to charge for the remaining work in this case. Gov't Resp. at 7 (emphasis in original).

During oral argument on October 5, 2015, Otay Mesa submitted an invoice from Marzulla Law for $9,360, the cost for the 24 hours the firm spent working on this matter during September of this year. Oct. 5, 2015 Oral Arg. ("Tr.") at 6. The Court has reviewed this invoice and finds that the hours billed are reasonable, particularly in light of the Government's comprehensive, if not excessive, objections to Otay Mesa's request for reimbursement. Accordingly, the Government shall reimburse Otay Mesa for the September billing. Additionally, the Court in its discretion awards Otay Mesa an additional $2,500 for attorneys' fees incurred because of October's oral argument, for a total of $11,860.

vi.  Contingency Fee

In addition to $1,590,213.75 in fees billed by Marzulla Law through September 2015, Otay Mesa also seeks reimbursement for a ten percent contingency fee it paid Marzulla Law. Pls.' Motion at 2. Otay Mesa and Marzulla Law agreed on this ten percent fee when initially negotiating payment. According to the Government, Otay Mesa is not entitled to reimbursement for the contingency fee because it was not "actually incurred as required by the URA" and "a reasonable fee has already been determined for the hourly rate of Plaintiffs' counsel." Gov't Resp. at 7. The Government's argument is flawed for two reasons.

First, the Government's argument "fails to appreciate what a contingent fee is. It is not based on *any* hours of work, only upon the ultimate result." Osprey Pacific Corp v. United States, 42 Fed. Cl. 740, 743 (1999) (emphasis in original). Here, the Court awarded a judgment of $802,501.23 in Otay Mesa's favor. With interest, Otay Mesa received $804,728.43 from the Government, $80,472.84 of which it paid to Marzulla Law. Pls.' Reply at Tab 8. Marzulla Law was only entitled to this amount because the contingency, securing a net recovery for its client, occurred. The fee itself was actually incurred when Otay Mesa made payment.

Second, the Government's argument fails to explain why this fee is unreasonable. Combining the contingency fee with the total hourly fee, the average hourly rate is only $296 an hour for legal services, an amount well below the adjusted Laffey rate of approximately $454 an hour.  Although a contingency fee is not based on hours billed, this calculation nevertheless demonstrates that the contingency fee itself is reasonable as part of the overall amount paid by Otay Mesa in litigating its takings claim against the Government.

The purpose of the URA is to make the plaintiff in a successful inverse condemnation proceeding whole.  See, e.g., Moore v. United States, 63 Fed. Cl. 781, 788 (2005) (explaining that "the URA is uniquely tied to the Fifth Amendment principle of just compensation.  It is designed to make plaintiffs whole.").  To effectuate this purpose, the Government must compensate a prevailing plaintiff for all reasonable fees and expenses incurred in establishing her rights against the United States.  Here, Otay Mesa has actually incurred an $80,472.84 contingency fee.  Moreover, including the contingency fee in calculating the average hourly rate still produces a billing rate well below the average market rate in Washington, D.C.  Thus, the contingency fee is reasonable and was actually incurred and the Court shall include this fee in calculating the total award.

      vii.  <u>Credit</u>

In 2013, Marzulla Law issued an $85,000 credit to the De La Fuente family to use toward their legal fees after the De La Fuentes disputed a fee they had paid to Marzulla Law in another matter.  Tr. at 16.  Otay Mesa applied $42,378.58 of the credit against its legal fees in this case in 2013 and 2014.  The Government contends the credit "lessens the total fees actually incurred by Plaintiffs" and asks the Court to deduct $85,000 from any fee award.  Gov't Resp. at 8.  Otay Mesa disagrees that the credit should affect its award in any way.  Pls.' Reply at 5.  As the Court understands the matter, when the De La Fuentes disputed a fee post-payment, Marzulla Law issued the family a credit for the disputed amount rather than writing them a check.  Otay Mesa then applied some of this credit toward amounts due in this case.  The Court fails to see how using a credit as payment for legal fees makes such fees any less "incurred" than they would be had Otay Mesa paid with a check.  The use of a credit provides no basis for adjusting the award in this case.

      viii.  <u>IIP Fees</u>

The Government also argues that "not all Plaintiffs were successful" and asks the Court to deduct an additional $96,412.25 from Plaintiffs' request.  Gov't Resp. at 19; Gov't Proposal.  The Court disagrees with the Government's characterization.  All of the businesses involved in this case are owned and operated by the De La Fuente family. Marzulla Law has represented this family through its businesses from the outset of this litigation, and the Court considered the claims raised throughout this litigation as belonging to a common entity.  All of the De La Fuentes' business entities shared in the damages

award. Accordingly, the Court will not adjust the total fee award in the case based on whether hours were billed for work on one family business as opposed to another.

ix. <u>Unsuccessful Claims: Percentage Reductions for Limited Success</u>

Along with its itemized objections to Otay Mesa's fees and expenses, the Government proposes that "it is entirely appropriate to apply a reduction to the hours expended" by Otay Mesa's attorneys to account for what the Government characterizes as Otay Mesa's "limited successful claim." Gov't Resp. at 18. Specifically, the Government argues that the Court should reduce the requested hours to reflect the fact that Otay Mesa prevailed on only one claim, a claim to which the Government stipulated to partial liability prior to trial.

Generally, when a plaintiff is successful in litigating pursuant to a federal fee-shifting statute, "the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters." <u>Hensley</u>, 461 U.S. at 435. Where the result a plaintiff obtains represents more modest success, the trial court, in its discretion, may adjust the lodestar calculation by reducing the number of hours reasonably expended in relation to the ultimate outcome. As this Court has explained, "[i]n accounting for the degree of success obtained, adjustments to the lodestar figure itself are proper only in 'rare' and 'exceptional' cases, but the trial court may consider the results obtained by the plaintiff in determining the lodestar figure in the first place." <u>Gregory</u>, 110 Fed. at 404 (citing <u>Bywaters</u>, 670 F.3d at 1228-29).

In this case, the Government proposes that the Court adopt an approach similar to the methodology it applied when calculating the attorneys' fee award in <u>Gregory</u>. In <u>Gregory</u>, this Court divided the litigation into separate time periods and applied various percentage reductions to the number of hours billed during each period. [2] <u>Gregory</u>, 110 Fed. Cl. at 404. Otay Mesa argues that it would be inappropriate to apply the <u>Gregory</u> method in this case. Pls.' Reply at 9. Specifically, Otay Mesa asserts that the Court entered a single judgment on behalf of all of the Plaintiffs in this case, whereas in <u>Gregory</u> only a small percentage of the plaintiffs prevailed. <u>Id.</u> The Court agrees with Otay Mesa that the instant case differs from <u>Gregory</u> in significant ways. However, the Government's reliance on the approach this Court used in <u>Gregory</u> is not entirely misguided.

---

[2] <u>Gregory</u> involved a rails-to-trails class action lawsuit brought by 257 plaintiffs. This Court held that the Government had taken easements on only 26 of the 331 parcels involved. The issue was how much of class counsel's total fees the successful plaintiffs could recover given that they represented no more than ten percent of the class. This Court found that much of the work involved in litigating the matter "related to all or many of the claims, and [could] not be parsed into parcel-by-parcel calculations." <u>Gregory</u>, 110 Fed. Cl. at 404. It therefore divided the litigation period into distinct timeframes and applied various percentage reductions to the hours expended in each period. <u>Id.</u>

10

Here, the Government asks the Court to divide the nearly ten years of litigation in this case into six periods and apply percentage reductions to the number of hours billed in each period depending on the type of work involved.  Gov't Resp. at 16-19.  Although the Court agrees it is appropriate to divide the litigation into separate periods, in this case, the Court finds that there are only two relevant time periods.  The first period runs from the filing of the initial complaint in this case through the first appeal to the Federal Circuit, and dates from March 3, 2006 through March 19, 2012.  Along with the first appeal, this period includes the discovery efforts leading to the Government's partial stipulation and the first and second trials.  The second period covers the remand trial on damages, the second appeal, the calculation of interest, and Otay Mesa's motion for attorneys' fees, and dates from March 20, 2012 through October 5, 2015.

### 1.  Phase One

In total, Plaintiffs seek reimbursement for 5,725.50 hours billed in this case.  After deducting the duplicative hours discussed above, the total hours billed in the first phase amount to 4,602.87, representing 4,528.27 hours by Marzulla Law and 74.6 hours by Mr. Fish.  The Government argues that the number of hours in this period should be reduced for various reasons.  First, the Government asks the Court to reduce the hours because Otay Mesa prevailed on only one claim, to which the Government stipulated to partial liability prior to trial.  Gov't Resp. at 16.  Second, the Government asks the Court to apply a "substantial discount" to the hours to account for work performed for the "non-prevailing" plaintiffs.  Id. at 17.  Third, the Government contends that the Court should substantially reduce the number of hours billed for the first damages trial "to ensure that Plaintiffs are not awarded fees for work spent on their unsuccessful arguments."  Id. at 20.  Finally, the Government asks for a reduction to the hours spent on the first appeal given that Otay Mesa was unsuccessful with its claims relating to the time period and scope of the easement.  Id. at 20-21.  In total, the Government proposes approximately a 52 percent reduction in the total number of hours billed during this period.

Otay Mesa objects to the Government's proposed reductions, arguing that the Government fails to identify specific work it deems unnecessary or unreasonable.  Pls.' Reply at 10.  Otay Mesa also contends that the extensive work leading up to the Government's stipulation was necessary in order to obtain that stipulation.  Id. at 11.  Lastly, as to the first damages trial and appeal, Otay Mesa points to this Court's judgment in its favor and the Federal Circuit's rejection of the Government's argument in favor of nominal damages to dispute the Government's limited success argument.  Id. at 11-12.

The Court agrees with the Government that a reduction in hours for this time period is appropriate.  See, e.g., Gregory, 110 Fed. Cl. at 404 (finding it appropriate "to reduce the number of hours to a level that would be 'reasonably expended' in litigating the 26 successful taking claims").  Except for the Government's stipulation, Otay Mesa's claims were timed barred and the Court deems it appropriate to reduce the number of hours billed

to account for time spent pursuing these stale claims through the first appeal. Nevertheless, the Court allowed recovery for the taking to which the Government stipulated and the Court recognizes the validity of Otay Mesa's contention that Marzulla Law's dogged efforts were important in obtaining the Government's stipulation. Given that there is no feasible way to parse the recorded hours into time spent on successful as opposed to unsuccessful claims, the Court in its discretion reduces the number of hours expended in first phase of litigation by 40 percent. For Phase One, Otay Mesa shall recover fees for 2,761.72 hours.

## 2.  Phase Two

Along with each of the proposed reductions in hours outlined above, the Government requests additional reductions through March 19, 2015. In support of its argument, the Government points to the difference between the damages amount initially sought by Otay Mesa and the amount ultimately awarded. Gov't Resp. at 2. The Government's argument fails to consider the effect of its stipulation to liability and the fact that it has challenged nearly every claim and issue raised by Otay Mesa to date. See City of Riverside v. Rivera, 477 U.S. 561, 580 n.11 (1986) (cautioning that "the government cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response.").

After the first appeal in this case, the only remaining issue before this Court was to determine the amount Otay Mesa should recover in just compensation, with interest, for the Government's taking of a permanent easement over Otay Mesa's property. Given the Government's stipulation, Otay Mesa is entitled to reimbursement for its reasonable attorneys' fees and expenses incurred in securing just compensation for the Government's taking. Cloverport Sand & Gravel Co., Inc. v. United States, 10 Cl. Ct. 121, 127 (1986) (holding that when the Government stipulated to liability for a taking, "the Uniform Relocation Act applied at that point and mandated the award of reasonable attorneys' fees and expenses, even though there [was] limited success on the merits and certainly not the results reached that the plaintiff had contemplated.").[3]

The Government stipulated to the taking of an easement over Otay Mesa's property. Following the first appeal in this case, the remaining litigation was to determine the correct amount of just compensation. Pursuant to the URA, Otay Mesa is entitled to all reasonable fees and expenses incurred for such proceedings, and the Government should have been on

---

[3] Going forward, the Government might consider the following advice offered by this Court nearly twenty years ago in a similar case: "[o]nce the Government stipulates to liability, as it did in this case, then it should be well aware and cognizant that it will be liable, in addition to damages in compensation, for all reasonable attorneys' fees and expenses incurred by the plaintiff. Accordingly, the Government should carefully assess each case brought under section 1346(a)(2) or 1491 of Title 28, for the Government's taking of private property, both as to the Government's potential monetary exposure for liability and for its potential exposure as to attorneys' fees and expenses." Cloverport Sand & Gravel Co., Inc., 10 Cl. Ct. at 127.

notice of this fact.  Except for the duplicative hours discussed above, Otay Mesa is entitled to recover for all hours expended on and after March 20, 2012, for a total of 1,098.63 hours.

### b.  Reasonable Billing Rates

The Government does not challenge the reasonableness of the hourly rates Otay Mesa paid for legal services in this case.  The attorneys from Marzulla Law practice in Washington, D.C., and Mr. Fish is based in San Diego, California.  Pursuant to the Updated Laffey Matrix, Marzulla Law's average hourly rate would be approximately $454.  Pls.' Reply at 6.  Instead, Otay Mesa paid an average hourly rate of $282 to Marzulla Law for its work and $287 an hour to Mr. Fish.[4]  Including the contingency fee, Marzulla Law's average hourly rate becomes $296, still well below the adjusted Laffey rate.  The Court therefore makes no adjustments to the billing rates.

## III.  Litigation Expenses and Costs

The URA also provides for reimbursement of Plaintiffs' reasonable costs and expenses.  42 U.S.C. § 4654(c).  Otay Mesa requests reimbursement of $397,695.30 in expenses for nearly ten years of litigation.  These costs were actually incurred by Otay Mesa for items such as couriers, postage, legal research, copying, travel and lodging, and expert witness fees.  The Court, in its discretion, finds it reasonable to award expenses in the same proportion as applied to the recovery of attorneys' fees.  Thus, Otay Mesa is entitled to recover 60 percent of incurred expenses through March 19, 2012, and one hundred percent of all expenses incurred thereafter.

The Court has reviewed the Government's other objections and proposed reductions to Otay Mesa's requests and finds that Otay Mesa has met its burden by establishing that the contested expenses are reasonable, supported, and therefore compensable.

The Clerk of Court shall consider the amount due with respect to Otay Mesa's Bill of Costs separately.

### Conclusion

The Court GRANTS IN PART Otay Mesa's motion for attorneys' fees, with adjustments made for the reasonable number of hours spent litigating Otay Mesa's successful claim as to the Government's taking of a permanent physical easement over Otay Mesa's property.  The Court finds that counsels' rates in this case are reasonable and

---

[4] To calculate Marzulla Law's average hourly rate, the Court used the total dollar amount billed by Marzulla Law through September, 2015, less $10,000 for the litigation strategy report, $336 for the paralegal rate adjustment, and $7,767.50 for the duplicative billing, divided by the total number of hours billed less the 24 duplicative hours.  To calculate Mr. Fish's average hourly rate, the Court simply divided the total dollar amount billed by his firm by the number of hours worked.

awards Otay Mesa $1,172,050.34 in attorneys' fees.  The Court also awards $276,134.75 to Otay Mesa for its reasonable expenses.  In sum, the Clerk shall enter judgment for Plaintiffs in the amount of $1,448,185.09.

IT IS SO ORDERED.

s/Thomas C. Wheeler
THOMAS C. WHEELER
Judge